[No. B137639. Second Dist., Div. Four. Nov. 1, 2000.]

HOWARD JARVIS TAXPAYERS ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Timothy Bittle; Klapanis & Grimm, Trevor Grimm; and Richard I. Fine for Plaintiffs and Appellants.

James K. Hahn, City Attorney, Philip Shiner, Edward A. Schlotman and S. David Hotchkiss, Assistant City Attorneys, and Fay A. Chu, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**HASTINGS, J.**—Plaintiffs and appellants in this action are two nonprofit corporations, the Howard Jarvis Taxpayers Association and the Apartment Association of Los Angeles County, Inc., and three individuals, Ivan Shinkle, Harold Greenberg and Mark Dolan (collectively referred to as appellants). In June 1999, they brought a class action lawsuit on behalf of all individuals and entities who paid for water services in the City of Los Angeles from 1995 to the present, for declaratory relief, taxpayers' injunctive relief (Code Civ. Proc., § 526a), writ of mandate, and damages, against

the City of Los Angeles and the Los Angeles Department of Water and Power (collectively referred to as respondents). In October 1999, respondents' demurrer was sustained without leave to amend and the matter was dismissed. This appeal followed. We affirm the judgment (order of dismissal).

## FACTUAL AND PROCEDURAL BACKGROUND

In their complaint, appellants allege that they were overcharged for water services and that the overcharges resulted in a surplus in the city's water revenue fund. Appellants allege that during 1995-1999, respondents illegally transferred the surplus of approximately $87 million from the water revenue fund to the city's reserve fund and then to the city's general fund. Appellants contend that this transfer of funds violates Proposition 218 (Cal. Const., arts. XIII C and XIII D) and the provisions of the Los Angeles City Charter (City Charter). The gist of appellants' argument is that payments for water services are essentially property-related user fees or special taxes, and thus come under the purview of Proposition 218, which prohibits the imposition of certain tax levies and real property assessments without voter approval.

Respondents do not deny that the transfers of funds were made, but argue that the department of water and power (DWP) has the power to set water rates, enjoy a reasonable rate of return, that the charging of such rates for water services does not constitute a property-related user fee or special tax within the meaning of Proposition 218, rather, it is the sale of a commodity, and that the city is authorized to make intra-fund transfers. Respondents also contend that appellants' complaint is procedurally defective for their failure to exhaust administrative remedies and to comply with class action requirements.

## DISCUSSION

1. *The Authority of the DWP to Set Rates and to Enjoy a Reasonable Rate of Return*

Article XXII, section 220 of the City Charter provides that the DWP has the power "to fix the rates to be charged for water . . . for use within or without the City, and to prescribe the time and the manner of payment of the same. [¶] (a) Such rates for water and reclaimed water shall be so fixed at least every two years; provided that, except as hereinafter otherwise prescribed, such rates shall be of uniform operation, as near as may be, and shall be *fair and reasonable, taking into consideration, among other things, the nature of the use, the quantity supplied and the value of the service;*

provided, further, that the rates inside the City may be less, but not greater, than the rates outside the City for the same or similar uses." (Italics added.)

■ Water rates established by the lawful rate-fixing body are presumed reasonable, fair and lawful. (*Hansen v. City of San Buenaventura* (1986) 42 Cal.3d 1172, 1180 [233 Cal.Rptr. 22, 729 P.2d 186].) A plaintiff contesting the rates bears the burden of proof of unreasonableness. (*Id.* at p. 1180; *Elliott v. City of Pacific Grove* (1975) 54 Cal.App.3d 53, 60 [126 Cal.Rptr. 371].)

In this case, appellants do not allege that water rates are unreasonable per se, for example, by comparison to other areas, past rates, or actual costs. Appellants seem to allege that the existence of a surplus in the water revenue fund proves that the DWP is overcharging for water. Appellants argue that water charges must reflect the cost of delivering the water and maintaining the system and that there should not have been a surplus if the City had regulated charges in a manner related to the costs. However, according to *Hansen*, a municipal utility is entitled to a reasonable rate of return and utility rates need not be based purely on costs. (*Hansen v. City of San Buenaventura, supra*, 42 Cal.3d at pp. 1176, 1183.)

Appellants argue that *Hansen,* decided before the adoption of Proposition 218, is no longer good law. As discussed *post*, we find that Proposition 218 does not apply to the rates at issue here.

2. *Are Water Rates Taxes or Fees? Does Proposition 218 Apply?*

"Proposition 218, the 'Right to Vote on Taxes Act,' was adopted by the voters in November 1996. The stated purpose of Proposition 218 was to 'protect[] taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent.' (Prop. 218, Gen. Elec. (Nov. 5, 1996) § 2, p. 108.) The proposition generally provides for taxpayer approval for the adoption, extension or increase .of taxes or assessments. Proposition 218 added [to the California Constitution,] article XIII C involving general and special taxes and article XIII D involving assessments." (*Howard Jarvis Taxpayers Assn. v. City of San Diego* (1999) 72 Cal.App.4th 230, 235 [84 Cal.Rptr.2d 804].)

Proposition 218 defines a "special tax" as "any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund." (Cal. Const., art. XIII C, § 1, subd. (d).) Pursuant to Proposition 218, a local government may not impose, extend or increase any special tax unless "that tax is submitted to the electorate and approved by a two-thirds vote." (Cal. Const., art. XIII C, § 2, subd. (d).)

Proposition 218 also provides: *"Except for fees or charges for sewer, water, and refuse collection services,* no property related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or . . . by a two-thirds vote of the electorate residing in the affected area." (Cal. Const., art. XIII D, § 6, subd. (c), italics added.) "Fee" and "Charge" are defined as "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person *as an incident of property ownership, including a user fee or charge for a property-related service.*" (Cal. Const., art. XIII D, § 2, subd. (e), italics added.)

■ Appellants contend that the charges imposed for water services in Los Angeles are in reality special taxes, imposed as an incident of property ownership, and therefore, require voter approval. We disagree.[1]

These usage rates are basically commodity charges which do not fall within the scope of Proposition 218. They do not constitute "fees" as defined in California Constitution, article XIII D, section 2, because they are not levies or assessments "incident of property ownership." (Subd. (e).) Nor are they fees for a "property-related service," defined in subdivision (h) as "a public service having a direct relationship to property ownership." As indicated by the ordinances setting water rates, the supply and delivery of water does not require that a person own or rent the property where the water is delivered. The charges for water service are based primarily on the amount consumed, and are not incident to or directly related to property ownership.[2]

---

[1]Assuming for purposes of argument that such charges were intended to fall within the overall scope of Proposition 218, the plain language of section 6, subdivision (c) of California Constitution, article XIII D specifically excludes "charges for . . . water. . . ." *Keller v. Chowchilla Water Dist.* (2000) 80 Cal.App.4th 1006 [96 Cal.Rptr.2d 246], dealt with a similar provision concerning standby charges for water. There, it was alleged that a water standby charge was in violation of Proposition 218, in particular, article XIII D, which provides that "standby charges" whether characterized as charges or assessments, must be voted on by owners of parcels to be assessed. Excluded from this requirement were assessments "imposed exclusively to finance the capital costs or maintenance and operation expenses for . . . water." (Cal. Const., art. XIII D, § 5, subd. (a).) The property owners prevailed in the trial court, but the district appealed. On appeal, the court concluded that the standby charge fell within the exceptions of section 5, subdivision (a), and that a vote was not necessary. Here, we are not dealing with standby charges.

[2]See *Isaac* v. *City of Los Angeles* (1998) 66 Cal.App.4th 586 [77 Cal.Rptr.2d 752], which dealt with constitutionality of an ordinance which allowed the city to record "super priority" liens, clouding the title of the apartment building for nonpayment of utility bills. The Court of Appeal affirmed the judgment, finding that the utility lien created by the ordinance was a user fee, not a special assessment, special tax, nor a regulatory or development fee. (*Id.* at p.

### 3. Can the City Transfer Monies Between the Various Funds?

Article XXVIII, section 380 of the City Charter[3] established various funds in the city treasury, including the reserve fund, the water revenue fund, and the general fund. The general fund "is established as a medium of control of and accounting for municipal activities other than activities authorized or contemplated by special funds. All revenues and receipts which are not by law or Charter pledged or encumbered for special purposes shall be credited to the general fund."

Appellants argue that nothing allows monies from the water revenue fund to be transferred to the general fund. However, our review of the provisions of the City Charter reveals that the city council is authorized to transfer surplus funds from the water revenue fund to the reserve fund, and is also authorized to transfer funds from the reserve fund to the general fund.

City Charter article XXII, section 221 provides: "None of the money in or belonging to the water revenue fund . . . shall be appropriated or used for any purpose except . . . to be transferred as provided in Section 382 of this Charter."

City Charter article XXVIII, section 382 provides: "the Council may, by ordinance, direct that any or all said surplus money in . . . the water revenue fund be transferred to [the] reserve fund with the consent of the board in charge of such fund, but not otherwise."

These provisions of the City Charter make it clear that any transfer from the water revenue fund to the reserve fund was a lawful exercise of the city's power. By the same token, the subsequent transfers from the reserve fund to the general fund were also authorized.

City Charter article XXVIII, section 381 provides in pertinent part: "(a) It shall not be lawful to transfer money from one fund to another, or to use the same in payment of demands upon another fund, except in the case of the unappropriated balance and the reserve fund, or except as in this Charter specifically provided."

City Charter article XXVIII, section 354 provides: "Transfers may be made from the 'reserve fund' subsequent to the adoption of the annual

---

597.) We note that the *Isaac* court also concluded, in dicta, that "[T]he utility customer's agreement to pay a certain rate for a certain usage of utilities is a contractual obligation, and is far removed from the revenue-raising devices of assessments and taxes." (*Ibid.*)

[3]The version of the City Charter at issue has been repealed. A new version of the City Charter became effective July 1, 2000.

budget to meet in whole or in part any appropriated item of the annual budget, including the unappropriated balance, or to meet in whole or in part any tax required to be levied in addition to or apart from the tax required to be levied pursuant to Section 352 or Section 353 of the Charter, or maybe [*sic*] made to the 'general fund,' or to the 'unappropriated balance,' and appropriations from the 'unappropriated balance' may be made subsequent to the adoption of the budget, as follows: [¶] (a) Upon recommendation of the Mayor, approved by a majority vote of the Council; [¶] (b) Upon a majority vote of the Council, subject to the approval of the Mayor, or passage by the Council over the Mayor's veto by a two-thirds vote."

Appellants do not allege that respondents transferred funds directly from the water revenue fund to the general fund. Since we can find nothing prohibiting the city from making the transfers by the method it employed, appellants' argument fails.

## DISPOSITION

Since appellants cannot show that the rates charged are unreasonable, or that the rates constitute a property-related fee or tax, or that the city made any unauthorized transfers of fund, we conclude they have failed to state a cause of action for declaratory relief, taxpayers' injunctive relief, or mandamus and that the demurrer of respondents was properly sustained. (*Mez Industries, Inc. v. Pacific Nat. Ins. Co.* (1999) 76 Cal.App.4th 856, 864 [90 Cal.Rptr.2d 721].)

The judgment (order of dismissal) is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied December 1, 2000, and appellants' petition for review by the Supreme Court was denied February 14, 2001. Baxter, J., and Brown, J., were of the opinion that the petition should be granted.