[No. C036295. Third Dist. Apr. 12, 2002.]

HOWARD JARVIS TAXPAYERS ASSOCIATION et al., Plaintiffs and Respondents, v.
CITY OF ROSEVILLE, Defendant and Appellant.

## COUNSEL

Mark J. Doane, City Attorney, Richard G. Glenn, Deputy City Attorney; and Dennis W. De Cuir for Defendant and Appellant.

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Plaintiffs and Respondents.

## OPINION

**DAVIS, J.**—The City of Roseville (Roseville) operates three municipal utilities that provide, respectively, water, sewer, and refuse collection services. Roseville imposes an "in-lieu franchise fee" (in-lieu fee) of 4 percent on each of the utilities' annual budgets; this fee is paid by the utility ratepayers and transferred to Roseville's general fund.

This appeal presents us with two principal questions: whether Proposition 218—a descendant of Proposition 13 that covers local government fees and charges—applies to Roseville's in-lieu fee; and, if so, whether the in-lieu fee violates Proposition 218. We answer yes to both questions and affirm the judgment.

## BACKGROUND

Private utilities pay public authorities "franchise fees" to use government land such as streets, or for rights-of-way to provide utility service.[1] Roseville similarly imposes the in-lieu fee on its municipal utilities; "in-lieu" is the term of choice since the utilities are not private entities.

The accounting for Roseville's municipal utilities is maintained in enterprise accounts that are separate from Roseville's general fund. The in-lieu fee was conceived in 1968, and has existed in various forms since then. The in-lieu fee at issue here began in 1992, when Roseville began transferring from the utilities' enterprise accounts to its general fund a fee of 4 percent of the utilities' annual budgets.

The Howard Jarvis Taxpayers Association, together with two other groups and two individual ratepayers (collectively referred to as plaintiffs), sued Roseville over the in-lieu fee. Plaintiffs sought declaratory relief, injunctive relief, and a writ of mandate; they claimed the in-lieu fee violated Proposition 218 by imposing a fee for a property-related service that was not tied properly to the cost of providing that service. Plaintiffs initially had also sought a refund, but they abandoned that claim.

Preliminarily, Roseville argues that plaintiffs failed to exhaust their administrative remedies, and that the trial court lacked jurisdiction to entertain a suit in equity because plaintiffs had the adequate legal remedy of a refund. Similar to the situation presented in the recent high court decision in *Agnew v. State Bd. of Equalization*, however, the legal validity of the in-lieu fee is a question properly raised through an action seeking declaratory, injunctive and mandate relief; to the extent the complaint seeks a judicial determination of the legal validity of the in-lieu fee, it does not involve an issue subject to determination through the administrative refund remedy available to plaintiffs.[2]

Roseville sought to counter plaintiffs' view of the in-lieu fee (i.e., as one not tied properly to the cost of providing the utility service) by characterizing the fee as compensation or rent paid to its general fund by each of the municipal utilities for the costs of Roseville's streets, alleys and rights-of-way used to provide utility service; or as a reasonable economic return

---

[1]*Santa Barbara County Taxpayer Assn. v. Board of Supervisors* (1989) 209 Cal.App.3d 940, 949 [257 Cal.Rptr. 615] (*Santa Barbara Taxpayer Assn.*).

[2]*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 319-320 [87 Cal.Rptr.2d 423, 981 P.2d 52]; see also *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 822 [107 Cal.Rptr.2d 369, 23 P.3d 601], citing *Brown v. County of Los Angeles* (1999) 72 Cal.App.4th 665, 670 [85 Cal.Rptr.2d 414].

to the general fund which supports or pays for those streets, alleys and rights-of-way.

Plaintiffs and Roseville filed cross-motions for summary judgment. Plaintiffs emerged with the judgment. The trial court concluded: "Assuming without deciding that [Roseville] has the right to charge the budgets of the municipal utilities with the cost of using [Roseville's] rights[-]of[-]way, the in-lieu franchise fee as presently imposed does not appear to bear any relationship to the actual cost of maintenance of those rights[-]of[-]way, or the utilities' proportional share of that cost."

We will turn now to the first issue, whether Proposition 218 applies to the in-lieu fee. We will weave the pertinent facts into the fabric of our discussion.

## DISCUSSION

### 1. *Proposition 218 Applies to the In-lieu Fee*

In November 1996, California voters adopted Proposition 218, the Right to Vote on Taxes Act.[3] In adopting this measure, the people found and declared " 'that Proposition 13 was intended to provide effective tax relief and to require voter approval of tax increases. However, local governments have subjected taxpayers to excessive tax, assessment, fee and charge increases that not only frustrate the purposes of voter approval for tax increases, but also threaten the economic security of all Californians and the California economy itself. This measure protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent.' "[4]

Proposition 218 added articles XIII C and XIII D to the California Constitution. Article XIII C concerns voter approval for local government general taxes and special taxes. Article XIII D sets forth procedures, requirements and voter approval mechanisms for local government assessments, fees and charges. We are concerned here with article XIII D, specifically certain provisions concerning fees and charges.

The relevant California Constitution, article XIII D provisions on fees and charges are as follows:

---

[3]See Historical Notes, 2A West's Annotated California Constitution (2002 supp.) following article XIII C, section 1, page 38; California Constitution, articles XIII C and XIII D; *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 835 [102 Cal.Rptr.2d 719, 14 P.3d 930] (*Apartment Assn.*).

[4]Historical Notes, 2A West's Annotated California Constitution (2002 supp.) following article XIII C, section 1, page 38.

"*Section 1. Application.* Notwithstanding any other provision of law, the provisions of this article shall apply to all . . . fees and charges [with some exceptions, most notably, existing laws relating to development fees or charges], whether imposed pursuant to state statute or local government charter authority. . . . [¶] . . . [¶]

"*Sec. 2. Definitions.* As used in this article: [¶] . . . [¶]

"(e) 'Fee' or 'charge' means any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property-related service. [¶] . . . [¶]

"(g) 'Property ownership' shall be deemed to include tenancies of real property where tenants are directly liable to pay the assessment, fee, or charge in question.

"(h) 'Property-related service' means a public service having a direct relationship to property ownership. [¶] . . . [¶]

"*Sec. 3. Property Taxes, Assessments, Fees and Charges Limited.* . . . [¶] . . . [¶]

"(b) For purposes of this article, fees for the provision of electrical or gas service shall not be deemed charges or fees imposed as an incident of property ownership. [¶] . . . [¶]

"*Sec. 6. Property-Related Fees and Charges. (a) Procedures for New or Increased Fees and Charges.* An agency shall follow the procedures pursuant to this section in imposing or increasing any fee or charge as defined pursuant to this article [these procedures include notice to property owners, and a public hearing for proposed new or increased fees]: [¶] . . . [¶]

"*(b) Requirements for Existing, New or Increased Fees and Charges.* A fee or charge shall not be extended, imposed, or increased by any agency unless it meets all of the following requirements:

"(1) Revenues derived from the fee or charge shall not exceed the funds required to provide the property-related service.

"(2) Revenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed.

"(3) The amount of a fee or charge imposed upon any parcel or person as an incident of property ownership shall not exceed the proportional cost of the service attributable to the parcel.

"(4) No fee or charge may be imposed for a service unless that service is actually used by, or immediately available to, the owner of the property in question. Fees or charges based on potential or future use of a service are not permitted. . . .

"(5) No fee or charge may be imposed for general governmental services including, but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners. [¶] Reliance by an agency on any parcel map, including, but not limited to, an assessor's parcel map, may be considered a significant factor in determining whether a fee or charge is imposed as an incident of property ownership for purposes of this article. In any legal action contesting the validity of a fee or charge, the burden shall be on the agency to demonstrate compliance with this article.

"*(c) Voter Approval for New or Increased Fees and Charges.* Except for fees or charges for sewer, water, and refuse collection services, no property-related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area. The election shall be conducted not less than 45 days after the public hearing. . . .

"(d) Beginning July 1, 1997, all fees or charges shall comply with this section." (Italics added.)

The issue here is whether the in-lieu fee for Roseville's water, sewer, and refuse collection services is within the California Constitution, article XIII D, section 2, definition of "fee" or "charge"—that is, "imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property-related service"; a " '[p]roperty-related service' means a public service having a direct relationship to property ownership." We conclude the in-lieu fee is within this definition.

We start with the definition's use of the term "agency." That term includes a charter city and any other local governmental entity.[5] Roseville and its municipal utilities fall within this definition.

That settled, the next inquiry is whether the in-lieu fee for Roseville's water, sewer, and refuse collection services is imposed "upon a parcel or

---

[5]California Constitution, article XIII D, section 2, subdivision (a); article XIII C, section 1, subdivision (b).

upon a person as an incident of property ownership[.]" Roseville Municipal Code governs water, sewer, and refuse charges. The relevant code provisions are as follows.

For water:

"The owner of the real property served by the city shall be charged with, and shall be personally responsible for, the water bills incurred for water service to such property."[6]

"The water division shall install service connections and lay service pipes up to the coterminous of the public easement or interest in land and the property of the applicant . . . ."[7]

"There shall be due and payable the following monthly charges, upon submission of the bill by the City to the owner of the property supplied with service, for all treated water measured by meters for residential, commercial, industrial and manufacturing or other purposes: [¶] . . . [¶] . . . The total amount due and payable shall be the sum of the monthly service charge plus the quantity rate. The monthly service charge is due and payable regardless of whether water has been consumed."[8]

"The following service charges shall apply to flat rate [residential] consumers [based on property lot size] that the Environmental Utilities Director determines are not cost effective to assign metered rates."[9]

"All consumers, whether owners or not, shall maintain and keep in good repair the water pipes on the interior and exterior of the property served."[10]

For sewer:

"If a lot or other parcel of property has had an existing connection to the public sewer system . . . , the connection fees . . . shall not be required

---

[6]Roseville Municipal Code (RMC) section 14.08.010; see, however, Public Utilities Code section 10009.6 and *California Apartment Assn. v. City of Stockton* (2000) 80 Cal.App.4th 699, 701 [95 Cal.Rptr.2d 605] (a municipal utility may be prohibited from making a residential property owner pay the overdue amounts for utility services provided a prior tenant).

[7]RMC section 14.08.020, subdivision A.

[8]RMC section 14.08.090.

[9]RMC section 14.08.100.

[10]RMC section 14.08.150.

. . . ." ". . . The city shall construct all laterals necessary to make connections from the main sewer to the line of the property of the adjoining owner[.]"[11]

"Except as otherwise provided in this chapter, a monthly unit sewer service charge [not dependent upon discharge volume] shall be paid by each [property-based residential (i.e., depending on dwelling type)] user connected to the City-owned public sewer. . . . [¶] . . . The monthly sewer charge shall be $15.50/sewer unit."[12] (Commercial and industrial users are property-based too, depending upon business or activity; some of these users are tied to discharge volume, and some are not.)[13]

And for refuse collection:

"Each and every householder or tenant occupying any dwelling, house, or residence, shall pay to the city . . . a fixed minimum charge . . . as a refuse fee. Such fixed minimum is based upon service of one (1) call per week, irrespective of whether there is any refuse to remove from any premises."[14]

"Every proprietor of each and every store, shop, apartment, house, roominghouse, or factory shall pay to the city . . . a fixed minimum charge . . . as a refuse fee. Such fixed minimum is based upon service of (1) call per week, irrespective of whether there is any refuse to remove from any premises."[15]

■ These municipal code sections direct the provision of water, sewer, and refuse services to (owned) property. These services are first necessarily delivered to property, and then, and only then, to those living or working on the property. This recognized dichotomy discounts any argument that water, sewer, and refuse services delivered to a tenant are not property-related, that is, not directly tied to property ownership. Furthermore, California Constitution, article XIII D, section 2, subdivision (g), states that " '[p]roperty ownership' shall be deemed to include tenancies of real property where tenants are directly liable to pay" the fee or charge. In light of these observations, we conclude that the in-lieu fee for Roseville's water, sewer,

---

[11]RMC sections 14.16.020, subdivision B., 14.16.030.
[12]RMC section 14.16.200; see also RMC sections 14.16.100, 14.16.210.
[13]RMC sections 14.16.220, 14.16.230, 14.16.240.
[14]RMC section 9.12.100, subdivision A.
[15]RMC section 9.12.100, subdivision 2A.

and refuse services, a fee not dependent upon the quantity of service used, is a fee imposed upon a parcel or upon a person as an incident of property ownership for Proposition 218 purposes.[16]

Our specific conclusion is buttressed by general language in California Constitution, article XIII D and in the ballot materials for Proposition 218, and by a recent state Supreme Court decision mindful of that language.

Under California Constitution, article XIII D, section 3, subdivision (b), "fees for the provision of electrical or gas service shall not be deemed charges or fees imposed as an incident of property ownership." More importantly, article XIII D, section 6, subdivision (c), states that "[e]xcept for fees or charges for sewer, water, and refuse collection services, no property-related fee or charge shall be imposed or increased" unless submitted for voter approval. There would be no point in specifically exempting sewer, water and refuse collection fees and charges from this one requirement of article XIII D, and in characterizing these fees and charges in this grammatical way, if they were not subject, at least in some respects, to article XIII D's other requirements for property-related fees or charges.

In the ballot materials for Proposition 218, the Legislative Analyst's analysis bears out this view. That analysis observes: "Local governments charge fees to pay for many services to their residents. Some of these fees pay for services to property, such as garbage collection and sewer service. . . . [¶] . . . [¶] . . . Fees for water, sewer, and refuse collection service probably meet the measure's definition of a property-related fee. Gas and electric fees and fees charged to land developers are specifically exempted. [¶] . . . [¶] . . . The most likely fees . . . affected by these provisions would be those for: [among others], water service."[17]

Our state high court, in *Apartment Assn.*, recently noted that this analysis from the Legislative Analyst "explained that Proposition 218 'would constrain local governments' ability to impose fees, assessments, and taxes,' meaning 'property-related' fees, including fees for water, sewer and refuse

---

[16]See 80 Ops.Cal.Atty.Gen. 183, 186 (1997) ("We believe that each water fee or charge must be examined individually in light of the [Proposition 218] constitutional mandate.")

[17]Ballot Pamphlet, General Election (Nov. 5, 1996), Proposition 218, analysis by the Legislative Analyst, pages 73-74; see *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 245-246 [149 Cal.Rptr. 239, 583 P.2d 1281] (courts may use ballot summary, arguments and analysis to construe voter-approved enactment).

collection, but excluding gas and electricity charges [citation] and development fees [citation]. [Citation.] It did not refer to levies linked more indirectly to property ownership."[18]

Roseville emphasizes two passages from *Apartment Assn.* There the court concluded that Proposition 218 did not apply to an inspection fee that a city imposed on apartment landlords for code compliance inspections.[19] The inspection fee, said the court, was "imposed on landlords not in their capacity as landowners, but in their capacity as business owners"[20] In the two passages that Roseville emphasizes, the *Apartment Assn.* court stated that Proposition 218 "only restricts fees imposed directly on property owners in their capacity as such," and "applies only to exactions levied solely by virtue of property ownership."[21] This reading was based on the plain language of Proposition 218's article XIII D, section 2, subdivision (e), which defines a fee or charge as one imposed "as an incident of property ownership" rather than "on an incident of property ownership."[22]

The inspection fee in *Apartment Assn.* was imposed because the property there was being rented; here, as we have seen, the in-lieu fee was imposed because the property was being owned. As the *Apartment Assn.* court reiterated, the inspection fee was "more in the nature of a fee for a business license than a charge against property."[23] Furthermore, article XIII D, section 2, subdivision (e)'s definition of fee or charge includes "a user fee or charge for a property-related service"; a property-related service "means a public service having a direct relationship to property ownership."[24] The relationship between the inspection fee in *Apartment Assn.* and property ownership was indirect—it was "overlain by the requirement that the landowner be a landlord."[25] Here, as we have seen, the relationship between the in-lieu fee and property ownership is direct.

Roseville also cites to *Howard Jarvis Taxpayers Assn. v. City of Los Angeles* to claim that the in-lieu fee is not subject to Proposition 218.[26] That case is distinguishable. There, the appellate court faced the question whether certain municipal water usage rates were imposed as an incident of property ownership, and therefore, required voter approval. The court noted that fees

---

[18]*Apartment Assn., supra*, 24 Cal.4th at page 839.
[19]*Apartment Assn., supra*, 24 Cal.4th at pages 833, 838.
[20]*Apartment Assn., supra*, 24 Cal.4th at page 840.
[21]*Apartment Assn., supra*, 24 Cal.4th at pages 838 and 842, respectively.
[22]*Apartment Assn.*, supra, 24 Cal.4th at pages 840-843.
[23]*Apartment Assn., supra*, 24 Cal.4th at page 840.
[24]California Constitution, article XIII D, section 2, subdivision (h).
[25]*Apartment Assn., supra*, 24 Cal.4th at page 843.
[26]*Howard Jarvis Taxpayers Assn. v. City of Los Angeles* (2000) 85 Cal.App.4th 79, 83 [101 Cal.Rptr.2d 905] (*Jarvis-L.A.*).

or charges for water services are specifically exempted from the voter approval requirement by California Constitution, article XIII D, section 6, subdivision (c). The court also noted that under the ordinances setting water rates, the supply and delivery of water did not require that a person own or rent the property where the water was delivered; and that the charges for water service were usage rates—basically, commodity charges—based primarily on the amount consumed. Therefore, the water usage rates were not incident to or directly related to property ownership within the meaning of Proposition 218.[27]

By contrast, the ordinances at issue here governing the initial delivery of water, sewer, and refuse collection services are necessarily tied to property ownership. And the in-lieu fee is not a commodity charge based primarily on the amount consumed; rather, it comprises a flat 4 percent of the yearly budgets of the water, sewer, and refuse utilities, and is a blended component of the rates charged by those utilities irrespective of the amount consumed. We do not suggest that measured or metered consumption determines, on its own, whether a fee is property related within the meaning of Proposition 218; it is simply a factor to consider in an analysis like that undertaken in *Jarvis-L.A.* We also reiterate that the evidence shows, and the parties have treated, the in-lieu fee, for Proposition 218 purposes, as a separate, independent fee for water, sewer, and refuse collection services, and not simply as a component part of another fee.

We conclude that Proposition 218 applies to the in-lieu fee for Roseville's water, sewer, and refuse collection services.

2. *The In-lieu Fee Violates Proposition 218*

■ Plaintiffs contend the in-lieu fee violates Proposition 218, specifically some of the cost and usage requirements set forth in section 6, subdivision (b) of California Constitution, article XIII D (hereafter section 6(b), or section 6(b) of Proposition 218). We agree.

Section 6(b)(1) states that "[r]evenues derived from the fee or charge shall not exceed the funds required to provide the property-related service." Section 6(b)(2) compatibly states that "[r]evenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed." And section 6(b)(5), in part, adds for emphasis, "[n]o fee or charge may be imposed for general governmental services including, but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners."

The theme of these sections is that fee or charge revenues may not exceed what it costs to provide fee or charge services. Of course, what it costs to

---

[27] *Jarvis-L.A.*, *supra*, 85 Cal.App.4th at page 83.

provide such services includes all the required costs of providing service, short-term and long-term, including operation, maintenance, financial, and capital expenditures. The key is that the revenues derived from the fee or charge are required to provide the service, and may be used only for the service. In short, the section 6(b) fee or charge must reasonably represent the cost of providing service.

In line with this theme, Roseville may charge its water, sewer, and refuse utilities for the street, alley and right-of-way costs attributed to the utilities; and Roseville may transfer these revenues to its general fund to pay for such costs (the general fund supports or pays for Roseville's streets, alleys, and rights-of-way). Here, however, there has been no showing that the in-lieu fee reasonably represents these costs.

Roseville sets the in-lieu fee at a flat 4 percent of each of the three utilities' annual budgets. On its face, this fee does not represent costs. It is a flat fee. It is imposed on the utilities' budgets, presumably after their total costs have been accounted for in the budget process. If the budget of a utility increases because of a cost increase unrelated to the in-lieu fee, the in-lieu revenues, as a flat percentage of that increased budget, increase as well. The in-lieu fee is the same percentage applied to each budget, regardless of varying uses of streets, alleys and rights-of-way by the individual utilities. It cannot be said that this flat fee on budgets coincides with these costs.

Roseville concedes that the in-lieu fee was set at 4 percent "of utility expenses by a process that considered (1) what [Roseville] collects as franchise fees from private enterprises, (2) what other communities collect as franchise fees, and (3) what would be a reasonable rate of return for use of [Roseville's] rights[-]of[-]way." As plaintiffs point out, however, not one of these factors aligns with an identified cost of providing utility service, as required by Proposition 218; instead, they all ask, " 'What will the market bear?' " While Roseville may be free to impose franchise fees on private utilities on the basis of contractual negotiation rather than costs, it is not free, under section 6(b) of Proposition 218, to impose franchise-like fees on a noncost basis regarding its municipal utilities.[28]

Relying on a valuation analysis it commissioned regarding the in-lieu fee (the Sierra West Report), Roseville notes the fee constitutes "[reasonable] compensation or rent paid to the General Fund by each of the municipal utilities as an expense for the costs of [Roseville's] streets, alleys, and rights-of-way used by such utilities in providing each separate utility service"; this report also characterizes the fee "as a reasonable economic return to the General Fund on the investment made by General Fund support of and

---

[28]See *Santa Barbara Taxpayer Assn., supra,* 209 Cal.App.3d at page 949.

contributions to each municipal utility." While the Sierra West Report may provide a theoretical foundation for imposing the in-lieu fee—at least with respect to compensation paid for the street, alley and right-of-way costs attributed to the utilities—the report fails to show those costs. Under section 6(b) of Proposition 218, the fee or charge must reasonably represent the cost of providing service.

Furthermore, the reliance by Roseville and by the Sierra West Report on aspects of the state Supreme Court's 1986 decision in *Hansen v. City of San Buenaventura* is problematic.[29] *Hansen* observed that a municipal utility is entitled to a reasonable rate of return and that utility rates need not be based purely on costs.[30] To support these observations, *Hansen* noted that nothing in the California Constitution forecloses a local governmental entity from " 'using the *net proceeds* of enterprises such as municipal utility systems for the benefit of its own general fund.' "[31] *Hansen*'s observations, however, were made 10 years before Proposition 218 added article XIII D to the state Constitution. Although the *Jarvis-L.A.* court relied on *Hansen* for part of its analysis, the decision in *Jarvis-L.A.* concluded that Proposition 218 did not apply to the water usage rates at issue there.[32]

We previously granted Roseville's request to take judicial notice of two local ballot measures that purported to amend Roseville's charter. These measures were approved by Roseville's electorate at a general municipal election held on November 7, 2000, after the trial court proceedings in this case. The two measures are Measure K, which received a majority vote; and Measure U, which received greater than a two-thirds vote.

Measure U amended the charter to state that "Each city-owned utility shall be financially self-sufficient, and shall fully compensate the city general fund for all goods, services, real property and rights to use or operate on or in city-owned real property."

Measure K purportedly amended the charter to provide that for purposes of accounting for the use of the public right-of-way, Roseville's utilities may pay to Roseville's general fund an in-lieu franchise fee not to exceed 4 percent of total utility operating and capital expenditures, which shall be budgeted and appropriated solely for police, fire, parks and recreation, or library services. The impartial ballot analysis for Measure K, written by Roseville's city attorney, stated that the measure, "if enacted, would validate

[29]*Hansen v. City of San Buenaventura* (1986) 42 Cal.3d 1172 [233 Cal.Rptr. 22, 729 P.2d 186] (*Hansen*).
[30]*Hansen, supra,* 42 Cal.3d at page 1182.
[31]*Hansen, supra,* 42 Cal.3d at pages 1182-1183, quoting *Golden Gate Bridge etc. Dist. v. Luehring* (1970) 4 Cal.App.3d 204, 215 [84 Cal.Rptr. 291], italics added in *Hansen*.
[32]*Jarvis-L.A., supra,* 85 Cal.App.4th at pages 81-83.

the in[-]lieu franchise fee concept as representing an element of the actual cost of providing utility services to the public."

These measures do not turn the tide for Roseville by displaying the costs the in-lieu fee covers. Measure U simply states that Roseville's utilities will pay Roseville for what the city provides the utilities, including real property and rights to use or operate on or in city-owned real property. Proposition 218 has no quarrel with Measure U in theory, but the measure does nothing to show what the actual costs of that real property, usage or operation are. And Measure K suffers from a similar deficiency. It states that the utilities may pay an in-lieu fee "not to exceed four percent (4%) of total operating and capital expenditures"—again, this measure does nothing to show actual costs. The city attorney's analysis of Measure K is couched similarly in theoretical terms: the measure "would validate the in[-]lieu franchise fee *concept* as representing an element of the actual cost of providing utility services . . . ." (italics added); moreover, the in-lieu revenues under Measure K are to be spent solely on police, fire, parks and recreation, or library services, rather than on actual costs of providing utility service. Because it is unnecessary to do so, we express no views regarding the validity of Measure K.

Last, but not least, the in-lieu fee violates section 6(b) of Proposition 218 in a more direct way. Roseville concedes that "[r]evenue from the in[-]lieu franchise fee is 'placed in [Roseville's] general fund to pay for general governmental services. It has not been pledged, formally or informally[,] for any specific purpose." This concession runs afoul of section 6(b)(2) that "[r]evenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed." It also contravenes section 6(b)(5) that "[n]o fee or charge may be imposed for general governmental services . . . ." As noted, Roseville may place in its general fund the revenues derived from a cost-based in-lieu franchise fee to pay for the street, alley and right-of-way costs attributed to the water, sewer and refuse utilities.

We conclude the in-lieu fee violates section 6(b) of Proposition 218.

### DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Callahan, J., concurred.

A petition for a rehearing was denied May 13, 2002, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 10, 2002. Brown, J., did not participate therein.