BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE JAMES F. PENMAN, SAN BERNARDINO CITY PROSECUTING ATTORNEY, has requested an opinion on the following question:
May a city, by ordinance, shift the burden of an annual business license fee from individual swap meet vendors to the operator of the swap meet without the prior approval of city voters?
 CONCLUSION
A city may, by ordinance, shift the burden of an annual business license fee from individual swap meet vendors to the operator of the swap meet without the prior approval of city voters if the fee is imposed as a regulatory measure.
 ANALYSIS
We are informed that a city currently imposes an annual business license fee on each outdoor swap meet vendor in an amount sufficient to cover the city's costs in processing the license application and inspecting the vendor's premises.[1] The question presented for resolution is whether the city may shift the burden of this business license fee from the vendors to the operator of the swap meet without first obtaining approval from the city's electorate. We conclude that prior voter approval would not be required if the fee were imposed as a regulatory measure.
In 1996, California voters approved Proposition 218, entitled the "Right to Vote on Taxes Act," which added articles XIII C and XIII D to the California Constitution. These constitutional provisions require voter approval before a local governmental entity may impose or increase any "general tax" (Cal. Const., art. XIII C, § 2, subd. (b)), "special tax" (Cal Const., art. XIII C, § 2, subd. (d)), "assessment" (Cal. Const., art. XIII D, § 4, subds. (d), (e)), or "fee or charge" (Cal. Const., art. XIII D, § 6, subd. (c)). (See Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles (2001) 24 Cal.4th 830,835-836; 81 Ops.Cal.Atty.Gen. 104, 105 (1998).) In 1997, the Legislature enacted implementing legislation, the "Proposition 218 Omnibus Implementation Act" (Gov. Code, §§ 53750 -53754), to clarify the circumstances under which Proposition 218 is applicable. (See 82 Ops.Cal.Atty.Gen. 180, 188 (1999); 81 Ops.Cal.Atty.Gen., supra, at pp. 109-110.)
In Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles, supra, 24 Cal.4th 830, the Supreme Court examined the types of fees that require prior voter approval under the terms of Proposition 218. The court concluded that article XIII D of the Constitution applies to fees and charges levied by virtue of property ownership but not to those levied by virtue of, for example, the ownership or operation of a business such as renting apartments. The court explained:
 We turn to the definitive language: restrictions on any levy imposed `upon a parcel or upon a person as an incident of property ownership.' (Art. XIII D, § 2, subd. (e).)
 "The foregoing language means that a levy may not be imposed on a property owner as such — i.e., in its capacity as property owner — unless it meets constitutional prerequisites. In this case, however, the fee is imposed on landlords not in their capacity as landowners, but in their capacity as business owners. The exaction at issue here is more in the nature of a fee for a business license than a charge against property. It is imposed only on those landowners who choose to engage in the residential rental business, and only while they are operating the business." (Id. at pp. 839-840.)
The court's decision in Apartment Assn. provides the answer to the question presented with respect to the imposition of a "fee or charge" under article XIII D of the Constitution. A business license fee is imposed on persons in their capacity as business owners, not in their capacity as landowners. The swap meet operator in question may be assessed a business license fee without the prior approval of the city's electorate because the exaction would not be directly tied to property ownership. Instead, the fee would be imposed only on those persons "who choose to engage in the . . . business, and only while they are operating the business." (Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles, supra, 24 Cal.4th at p. 840; see Howard Jarvis Taxpayers Assn. v. City of Los Angeles (2000) 85 Cal.App.4th 79, 83; Howard Jarvis Taxpayers Assn. v. City of San Diego (1999) 72 Cal.App.4th 230, 236-240; 80 Ops.Cal.Atty.Gen. 183, 185-186 (1997).)
Here, as indicated above, the license fee at issue is currently being imposed upon swap meet vendors in an amount sufficient to cover the city's costs in processing the license applications and inspecting the vendors' premises. As such, it is a "regulatory fee" similar to the one considered in Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles, supra, 24 Cal.4th 830. (Id. at p. 843, fn. 6.) For purposes of this analysis, we assume that the fee proposed to be levied against the swap meet operator would likewise be a regulatory measure, limited to the city's reasonable cost of providing the regulatory activity, and thus would not be subject to prior voter approval under article XIII D of the Constitution because of its lack of direct relationship to property ownership.
However, we note that a city may also impose a business license fee to raise revenue for the city. (Gov. Code, § 37101; cf Bus. 
Prof. Code, § 16000) Such a fee would not be limited to covering the city's costs of regulating the particular business and would therefore constitute a tax. (See Gov. Code, § 50076; Sinclair Paint Co. v. State Bd. of Equalization (1997) 15 Cal.4th 866,876-877.) The imposition of a tax upon the swap meet operator, who has not previously been assessed the tax, would trigger the application of article XIII C of the Constitution.[2] Whether the fee would be a "general tax" or a "special tax" for purposes of Proposition 218 would depend upon its purposes. (See Cal. Const., art. XIII C, § 1, subds. (a), (d); Gov. Code, § 53721; Santa Clara County Local Transportation Authority v. Guardino (1995) 11 Cal.4th 220, 231-232; Knox v. City of Orland (1992) 4 Cal.4th 132, 142; City and County of San Francisco v. Farrell (1982) 32 Cal.3d 47, 53; Howard Jarvis Taxpayers Assn. v. City of Los Angeles, supra, 85 Cal.App.4th at p. 82; Howard Jarvis Taxpayers Assn. v. City of San Diego, supra, 72 Cal.App.4th at pp. 238-239.) Prior voter approval would be required in either case. If the fee were a general tax imposed for general governmental purposes, it would require prior voter approval "by a majority vote." (Cal. Const., art. XIII C, § 2, subd. (c).) If the fee were a special tax imposed for specific purposes, it would require prior voter approval "by a two-thirds vote." (Cal. Const., art. XIII C, § 2, subd. (d); see Howard Jarvis Taxpayers Assn. v. City of Los Angeles, supra, 85 Cal.App.4th at p. 82; Howard Jarvis Taxpayers Assn. v. City of San Diego, supra, 72 Cal.App.4th at pp. 238.)
We conclude that a city may, by ordinance, shift the burden of an annual business license fee from individual swap meet vendors to the operator of the swap meet without the prior approval of city voters if the fee is imposed as a regulatory measure.
[1] Swap meet vendors and operators are subject to a state legislative scheme (Bus. Prof. Code, §§ 21660-21669.1) designed "to establish a uniform, statewide reporting system to locate stolen property" and to identify violations of sales tax laws. (64 Ops.Cal.Atty.Gen. 848, 850 (1981).) Under this state law, swap meet operators must have a valid business license in specified circumstances. (Bus. Prof. Code, § 21669, subd. (a)(1).)
[2] The question presented concerns the shifting of the burden of the business license fee from the swap meet vendors to the swap meet operator. A different situation would be presented if the swap meet operator were obligated to collect the business license fee from each vendor and transmit it to the city. (See Gov. Code, § 53750, subd. (h)(2)(B); Patel v. City of Gilroy (2002) 97 Cal.App.4th 483 [city tax required to be collected by hotels from hotel guests and transmitted to the city].)