Filed 1/8/16  Regan v. First American Title Ins. Co. CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| BRIAN C. REGAN, Individually and as CoTrustee, etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>    Defendant and Respondent. | D066552<br><br><br><br>(Super. Ct. No. 37-2013-78043-CU-FR-NC) |

APPEAL from an order of the Superior Court of San Diego County,

Earl H. Maas III, Judge.  Affirmed.


Rick L. Bove for Plaintiffs and Appellants.

Boss Law Firm, Daniel R. Salas and Bobby B. Ashrafi for Defendant and

Respondent.

INTRODUCTION

This litigation stems from a dispute regarding whether an easement exists over the property of Brian and Maria Regan (the Regans) for access to a neighboring piece of property now owned by the Bank of New York Mellon (BNY Mellon). When BNY Mellon discovered the Regans erected a fence blocking access to what it believed to be an easement to its property, it submitted a claim to its title insurer, First American Title Insurance Company (First American). First American attempted to negotiate with the Regans regarding the easement and, when those negotiations failed, BNY Mellon filed a quiet title action.[1] Thereafter, the Regans filed a complaint against First American for its role in the prelitigation negotiations and the filing of the *BNY Mellon's* action. The Regans appeal an order granting First American's special motion to strike the Regans' complaint pursuant to Code of Civil Procedure section 425.16,[2] the anti-SLAPP (strategic lawsuit against public participation) statute. We affirm the order because we conclude the activities the Regans allege First American engaged in are petitioning and speech activities protected by the anti-SLAPP statute and they cannot establish a probability of prevailing since the Regans' current claims are barred by the litigation privilege (Civ. Code, § 47).

---

[1] In a separate appeal, the Regans appeal an order granting BNY Mellon's special motion to strike certain causes of action from the Regans' cross-complaint in the quiet title action entitled *Bank of New York Mellon v. Regan*, D066555 (*BNY Mellon* action). We did not consolidate the appeals, but considered them together.

[2] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

A

*Background of the Property Dispute*

In 2004, the Regans and Frank and Janice Bigelbach (the Bigelbachs) jointly submitted an adjustment plat application to the City of Escondido (City) requesting approval of an adjustment to the boundary lines of four parcels of land, the one owned by the Regans and three owned by the Bigelbachs. The adjustment was part of a proposal to develop a tentative subdivision map for 11 single-family residential lots on the Bigelbachs' property. The proposal for the subdivision indicated access to the proposed subdivision would be provided by extending a nearby cul-de-sac road. The proposal also included potential condemnation of the Regans' property for a 24-foot-wide emergency access road and drainage easement.

One adjustment between the Regans' parcel (Parcel D) and one of the Bigelbachs' parcels (Parcel C) required the Bigelbachs to convey to the Regans a strip of land that had provided access for Parcel C to and from Bear Valley Parkway, a public street, by a paved driveway. The Regans agreed to grant a 24-foot easement for emergency access across this strip of land in lieu of condemnation of the property for purpose of access.

The adjustment plat map approved by the City in June 2005 depicts a proposed 24-foot access easement. Certificates of compliance referring to the adjustment plat map were recorded for each of the four parcels and the Regans received a grant deed for the strip of land from the Bigelbachs.

3

The Bigelbachs conveyed Parcel C to their son and his wife, Patrick and Lisa Bigelbach, in 2006. Thereafter, Patrick and Lisa Bigelbach obtained a loan secured by a deed of trust on the property. First American issued title insurance for the deed of trust on Parcel C. The description of the property referred to the June 2005 certificate of compliance, which referred to the adjustment plat showing the 24-foot access easement to the property.

BNY Mellon became the successor in interest to Parcel C six years later, in 2012, as a result of a foreclosure sale. It also became the successor insured under the title insurance policy.

B

*BNY Mellon's Title Policy Claim and Investigation*

When BNY Mellon discovered the Regans had erected a fence blocking access to Parcel C across the driveway from Bear Valley Parkway, BNY Mellon submitted a claim on the title insurance policy to First American. Upon investigation, First American discovered the easement to Bear Valley Parkway was not expressly reserved by recorded deed even though an easement is depicted on the adjustment plat map. Assuming this was due to inadvertence, First American contacted the Regans and attempted to negotiate a resolution of the access claim. First American hired counsel to continue negotiations or to proceed with a lawsuit on behalf of BNY Mellon to quiet title to the easement.

4

## C

### BNY Mellon Action, D066555

When the negotiations were unsuccessful, BNY Mellon filed a verified complaint against the Regans and their lender, JP Morgan Chase Bank (Chase Bank).  The complaint sought quiet title, reformation of the written instruments, and declaratory relief.  BNY Mellon alleged the Regans' fence across the easement left "no means of physical access from Bear Valley Parkway to the otherwise landlocked Parcel C."  BNY Mellon sought a judgment quieting title to the subject easement for purposes of vehicular and pedestrian right of ingress and egress to and from the public street system, and for an injunction requiring the Regans to remove the fence.  BNY Mellon filed a notice of the pending action (lis pendens).

Thereafter, the Regans filed a cross-complaint against BNY Mellon for slander of title, damages for violations of the Subdivision Map Act (SMA) (Govt. Code, § 66410 et seq.), intentional infliction of emotional distress, common law negligence, and quiet title. The cross-complaint alleged the Bigelbachs and other third parties committed wrongful acts related to the approval of the proposed subdivision and the separation of one parcel from the proposed subdivision plan in a "fraudulent scheme" to avoid the legal process required to develop a subdivision.  It alleged Patrick and Lisa Bigelbach relied on the "illegal separation" of Parcel C[3] from the approved subdivision map and an "unrecorded

---

3    This was apparently the subject property, Parcel C, but the cross-complaint refers to it as parcel 6 because it was so designated on some proposed subdivision plan maps. For consistency, we refer to it as Parcel C.

'Adjustment Plat' which was used to support a fraudulent representation that there existed an easement across [the Regans' property] (which provided paved access to Bear Valley Parkway) for the benefit of [Parcel C] … [to] fraudulently obtain[] a mortgage loan … secured by a [d]eed of [t]rust … under which [BNY Mellon] ultimately was named as beneficiary."  The cross-complaint alleged BNY Mellon "ratified and adopted" the Bigelbachs' "fraudulent scheme" because it is "the basis upon which [BNY Mellon] seeks relief."  The cross-complaint set forth allegations regarding the investigation done by First American and the prelitigation negotiations with the Regans regarding the easement, including an offer of money for the easement, as well as the filing of the *BNY Mellon* action, which the Regans characterized as "groundless, false and fraudulent."

D

*The Action Against First American*

The Regans then filed a verified complaint against First American and other individuals, including the Bigelbachs, for slander of title, damages for alleged violation of the SMA, intentional infliction of emotional distress, and negligence.  In the slander of title cause of action against First American, the Regans alleged First American conspired with BNY Mellon and the Regans' lender, Chase Bank, to ratify and adopt the wrongful conduct of the Bigelbachs and others "by filing in the name of [BNY Mellon] a groundless, false and fraudulent verified complaint … seeking to impose an easement" across the Regans' property for the benefit of Parcel C.

The complaint alleged evidence of First American's conspiracy to adopt the "fraudulent scheme" included communications from First American's counsel, First

6

American's offer to settle the easement issue, the filing of the *BNY Mellon* action, and the filing of the lis pendens. The complaint alleged a conspiracy between First American and the Regans' lender, Chase Bank, based on the filing of the BNY Mellon complaint, in which Chase Bank is named as a nominal defendant, and the filing of the lis pendens.

In the cause of action for damages for violation of the SMA, the Regans incorporated the prior allegations and alleged First American conspired "to implement the very same illegal scheme to avoid the requirements of the SMA" as to Parcel C "that was first concocted and implemented" by the other defendants. The Regans alleged they had no reason to suspect wrongful conduct until the filing of the *BNY Mellon* action. The causes of action for intentional infliction of emotional distress and negligence incorporated the prior allegations and alleged damages related to defending the *BNY Mellon* action.

E

*First American's Anti-SLAPP Motion*

First American brought a special motion to strike the entirety of the Regans' complaint against it pursuant to the anti-SLAPP statute. First American contended each of the causes of action alleged against it arose from acts undertaken in connection with the *BNY Mellon* action and were acts in furtherance of its right of petition and free speech. It also contended the Regans could not establish a probability of prevailing because the conduct forming the basis of each cause of action is protected by the litigation privilege.

7

First American supported its motion with declarations of Christina Yu, Senior Claims Counsel for First American, who investigated BNY Mellon's title claim, engaged in negotiations with the Regans and retained counsel to negotiate or pursue litigation on behalf of BNY Mellon and the attorney retained by First American to continue negotiations and/or pursue litigation regarding the easement. These declarations described the prelitigation investigation and negotiations as well as the filing of the *BNY Mellon* action. First American also filed a notice of lodgment and a request for judicial notice of documents regarding the history of the property, the prelitigation negotiations, the *BNY Mellon* action, and the Regans' cross-complaint against BNY Mellon.

The Regans opposed the special motion to strike contending their complaint against First American arises out of "First American's (1) abuse of the judicial process and its decision to prosecute a groundless, false and fraudulent Quiet Title action against [the Regans] for the improper purpose of attempting to minimize the $536,000 covered claim arising out of its own negligence with respect to the … Deed of Trust; (2) making malicious and unprivileged slanderous statements to [the Regans'] lender and neighbors concerning the title to [the Regans'] property; (3) soliciting [the Regans' lender] to wrongfully institute a non-judicial foreclosure process in order to acquire [the Regans'] home and the real property upon which it is situated." Rather than directly challenging the first "arising from" prong of the anti-SLAPP analysis, the Regans cited cases for the proposition that a defendant in a private ordinary dispute cannot take advantage of the anti-SLAPP statute because the complaint contains some reference to speech or petition

8

or because the lawsuit followed protected activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.)

For the second prong, the Regans contended they made a sufficient showing for each cause of action. However, they only responded to First American's assertion of the litigation privilege by stating it does not apply to nonjudicial communications made with malice. The Regans theorized First American must have had some communications with their lender about the *BNY Mellon* action with the intention of interrupting the Regans' attempts to modify their home loan. They claimed after the Regans told First American they were negotiating a loan modification, their lender stopped communicating with them and, when BNY Mellon filed its action, their lender initiated nonjudicial foreclosure proceedings.

The Regans submitted a declaration of a civil engineer who previously worked for the City. He offered the opinion the City did not intend to require access to Parcel C by way of an easement across the Regans' property. Instead, access to the lot was intended to be through another road, which would be extended as part of the project. He opined the tentative subdivision map indicated the panhandle portion of Parcel C would be transferred to the Regans in exchange for easements for emergency fire access and utilities. He also offered the opinion the Bigelbachs and others misrepresented an intention to seek approval for a 11-lot subdivision when they had already divided and conveyed the property for a 10-lot subdivision, resulting in a violation of the approval and various municipal and state laws.

9

The trial court granted First American's and BNY Mellon's special motions to strike finding "the allegations against the moving parties are based upon the filing of a lis penden[s], the pre-filing and post[-]filing actions of the moving parties, and the perceived intent of the moving parties in taking each of the actions … in furtherance of the quiet title action.  This satisfies the first prong of [section] 426.15."  As to the second prong of the statute regarding the Regans' burden of establishing a probability of prevailing, the court stated, "[w]hile Regan[s'] counsel and papers make persuasive arguments why they may successfully defend against [BNY Mellon's] action, they do not establish a probability that they will succeed on their affirmative claims against the moving parties."

DISCUSSION

I

*Generally Applicable Principles*

Section 425.16, subdivision (b)(1), states:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  This statute " 'provides a procedure for the early dismissal of what are commonly known as SLAPP suits …—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights.'  [Citation.]  A SLAPP suit is generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.' "  (*Gotterba v. Travolta* (2014) 228 Cal.App.4th

10

35, 40.) The Legislature requires courts to construe this statute broadly in favor of the moving party. (§ 425.16, subd. (a).)

Section 425.16, subdivision (e), describes the type of activity protected by the anti-SLAPP statute. An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) When the first two subparts of section 425.16, subdivision (e), are at issue (i.e., speech or petitioning before a legislative, executive, judicial or other official proceeding; or statements made in connection with an issue under review or consideration by an official body), the moving party is not required to independently demonstrate that the matter is a " 'public issue' " within the statute's meaning. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113.)

The analysis of an anti-SLAPP motion involves two steps. " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds

11

such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] We review an order granting or denying a motion to strike under section 425.16 de novo." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 (*Oasis West*).)

"We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

II

*The Complaint Against First American Arises from Protected Activity*

In determining whether a claim arises from protected activity, a court must "disregard the labeling of the claim [citation] and instead 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' and whether the trial court correctly ruled on the anti-SLAPP motion. [Citation.] We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' " (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271-1272.) "The anti-SLAPP statute's

12

definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

First American contends the activities alleged against it fall within the first and second categories of actions " 'in furtherance of' " free speech or petition rights: "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1) & (e)(2); see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

The Regans' complaint described First American's prelitigation communications and negotiations with the Regans about the easement, the filing of the *BNY Mellon* action, and the recording of the lis pendens. The Regans alleged First American "ratified, adopted" and attempted to employ the "illegal scheme" alleged against the other defendants by pursuing the *BNY Mellon* action. They also alleged First American conspired with the Regans' lender "to tortuously abuse judicial and non-judicial processes" allegedly with the intention of causing the Regans to lose the property in nonjudicial foreclosure proceedings so First American could gain the easement. All of this activity is protected activity. " 'Filing a lawsuit is an act in furtherance of the

13

constitutional right of petition, regardless of whether it has merit.' " (*Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 120.)

In addition, statements or activities made in connection with or in preparation for litigation are subject to the protection of the statute. (*Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at p. 1115.) Courts have "adopted a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) "Although many anti-SLAPP cases involving prelitigation communications concern demand letters or other statements to adverse parties or potential adverse parties [citations], there is no such requirement in the text of section 425.16, subdivision (e)(2). That provision has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1270.) Therefore, even the conspiracy allegations in the complaint imply communications between BNY Mellon and the Regans' lender connected to the anticipated litigation, which are subject to the protection of the anti-SLAPP statute.

The Regans offer four contentions for why the complaint falls outside the scope of the anti-SLAPP statute: (1) the complaint is a responsive compulsory counterclaim, (2) the BNY Mellon complaint involves a simple private property dispute, (3) the BNY Mellon complaint is a sham pleading, and (4) the prelitigation activities and communications cannot be in furtherance of protected speech or petitioning activity because they were illegal. We find no merit in these contentions, as we shall explain.

14

As to their contention the complaint is a compulsory cross-action, the Regans provide only a block quote from *City of Cotati v. Cashman*, *supra*, 29 Cal.4th 69 without legal analysis or citation to the record. "[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287; Cal. Rules of Court, rule 8.204(a)(1)(B)-(C).) "The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)

Nevertheless, based on our independent review of the pleadings, we conclude the Regans' complaint against First American is not a cross-action arising from the same transaction or occurrence as the *BNY Mellon* action. The *BNY Mellon* action is a quiet title action asking the court to make a legal determination regarding the existence or nonexistence of an easement across the Regans' property for the benefit of BNY Mellon's property. In contrast, the Regans' complaint against First American for slander of title, violation of the SMA, intentional infliction of emotional distress is based entirely on First American's activities in connection with the BNY Mellon litigation: the filing of the quiet title action, the filing of the lis pendens, and prelitigation communications and activities related to the *BNY Mellon* action. "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78.) Here, the alleged activities and communications were themselves acts

in furtherance of First American's right of petition of free speech and are protected by the anti-SLAPP statute.

## 2

The Regans next contend the *BNY Mellon* action falls outside the protection of the anti-SLAPP statute because it involves a simple property dispute. However, the case upon which they rely does not stand for this proposition and is inapposite to the facts here. *Episcopal Church Cases* (2009) 45 Cal.4th 467 involved actions to determine ownership of a church building and surrounding property after a local parish disaffiliated with the national organization. The local parish contended the anti-SLAPP statute applied because the litigation arose from its "protected activity in first expressing disagreement with the higher church authorities regarding church governance and then disaffiliating from the general church." (*Id*. at p. 477.) The Supreme Court disagreed and concluded it did not matter why the local church disaffiliated with the national organization or that the litigation followed protected activity. The issue in the case involved which entity owned the local parish property. "The property dispute is based on the fact that both sides claim ownership of the same property. This dispute, and not any protected activity, is 'the gravamen or principal thrust' of the action." (*Ibid*.)

In contrast, the Regans' complaint does not merely seek a determination of the merits of a property dispute, it seeks damages from First American for exercising its petitioning and speech activities in connection with the *BNY Mellon* action. It does not matter that the underlying *BNY Mellon* action involves a property dispute. This

16

complaint against First American is within the scope of the anti-SLAPP statute because the gravamen or principal thrust of the action is based on protected activity.

3

The Regans next contend a sham pleading is not protected by the anti-SLAPP statute. However, the Regans miscite or misapprehend our decision in *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, in which we concluded a malicious prosecution action falls within the scope of the anti-SLAPP statute. We acknowledged "a person does not have a constitutionally protected right to file a complaint that is unsupported by the facts." (*Id.* at p. 1089.) However, as we explained in the next sentence, " '[t]he Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law.' [Citations.] Instead, *under the statutory scheme, a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary*. [Citation.] Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens. [Citation.] A limited exception to the rule precluding a court from determining the validity of the asserted constitutional right in the first step of the anti-SLAPP analysis applies only where the defendant indisputably concedes the claim arose from illegal or constitutionally unprotected activity. " (*Id.* at pp. 1089-1090, italics added.)

Apparently attempting to fall within this exception, the Regans argue, with no citation to the record, First American's attorney "essentially conceded" in oral argument

17

on the anti-SLAPP motion "that the BNY Mellon Complaint is based entirely upon . . . blatantly false allegations." Issues may be considered waived if a party's brief fails to adequately cite to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

Even if we were to consider the argument, we find no support for this contention in the record. In response to the Regans' attorney's argument, First American's attorney merely stated the merits of the property dispute and the motivations for the filing of the *BNY Mellon* action were not relevant to the anti-SLAPP motion. He argued the only relevant issues were whether or not the conduct alleged in the Regans' complaint against First American was protected activity and whether or not they had a probability of prevailing on those claims. This was a correct statement of the law.

4

Similarly, there is no merit to the Regans' contention the activity alleged against First American constitutes false or illegal activity, which would not be subject to the anti-SLAPP statue. In *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*) the Supreme Court explained illegal speech or petitioning activity, which is conceded or conclusively proven, is not a *valid* exercise of rights of the constitutional rights of freedom of speech and petition and is not protected under the anti-SLAPP statute. (*Id.* at p. 316.) However, the exception for illegal activity is narrow and is only applied in "*rare cases* in which there is uncontroverted and uncontested evidence that establishes the crime as a matter of law." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 386 (*Cross*), italics added.) The term "illegal" as used by the Supreme Court was intended to mean criminal conduct, not

18

merely conduct in violation of a statute. (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 806-807.)

The Regans argue, again with no citation to the record, the BNY Mellon complaint contained false statements about whether the "Adjustment Plat 2004-10" was recorded.[4] They argue these false statements resulted in illegal activity. They also contend First American's attempt to settle the easement dispute for $2,500 amounted to extortion. We deem these arguments waived based on the failure to support the arguments with record citations or cogent legal analysis. (*Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1246; *City of Santa Maria v. Adam*, *supra*, 211 Cal.App.4th at pp. 286-287.) The Regans did not clearly raise the illegality exception below and have not met their burden of conclusively proving the alleged conduct by First American was illegal and not entitled to protection by the statute. (*Cross*, *supra*, 197 Cal.App.4th at p. 385.) Therefore, the anti-SLAPP statute applies to the complaint against First American.

---

[4]    We note the BNY Mellon complaint does not allege the Adjustment Plat 2004-10 was "duly recorded." It alleges, "the Adjustment Plat Map was given final approval by the City and was identified by the City as Adjustment Plat No. 2004-10" in June 2005. It then alleges, "the City issued four Certificates of compliance for the four parcels, each of which was recorded in the Official Records of San Diego County." These recorded documents, including the one for Parcel C, made reference to Adjustment Plat 2004-10. Therefore, even if we were to consider the Regans' unsupported allegations, we can discern no admission of a false statement supporting an illegality exception to the anti-SLAPP statute.

19

## III

### *The Regans Have Not Demonstrated a Probability of Prevailing*

In the second step, the burden shifts to the plaintiffs to show a probability of prevailing on its claims. To meet this burden, the plaintiffs cannot rely solely on the allegations in the complaint and must present admissible evidence. (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679.) The plaintiffs' burden to show a "probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Oasis West*, *supra*, 51 Cal.4th at p. 820; *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379-382.)

In this case, First American contends the Regans cannot prevail on their first through fourth causes of action because the litigation privilege bars each of these claims. "The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to any

20

communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) The purpose of the litigation privilege is to afford " 'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Ibid.*)

" 'The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution. [Citation.]' [Citation.] 'Any doubt about whether the privilege applies is resolved in favor of applying it.' " (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 212.)

The Regans have not responded substantively, either in the opening brief or in the opposition papers filed with the trial court, to First American's contention the litigation privilege bars their claims. Instead, their response has been to argue and present evidence in support of their contention BNY Mellon's quiet title action has no merit because no easement exists over their property. The issue of whether or not an easement for Parcel C exists across their property will be resolved on the merits of BNY Mellon's quiet title action. Whether or not the Regans may ultimately prevail on the merits or subsequently bring a malicious prosecution action is not before us. By failing to address the issue of the application of the litigation privilege to the causes of action alleged in the instant

21

complaint against First American, the Regans have waived any argument to the contrary. (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["[i]ssues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)  As such, they have failed to meet their burden of showing a probability of prevailing.

DISPOSITION

The order granting First American's special motion to strike is affirmed.  First American shall recover its costs on appeal.


MCCONNELL, P. J.

WE CONCUR:


MCDONALD, J.


AARON, J.

22