Filed 6/25/14; pub. order 7/22/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM JEFFERSON & CO., INC., | |
| Plaintiff and Appellant, | G049344 |
| v. | (Super. Ct. No. 30-2009-00320915) |
| ASSESSMENT APPEALS BOARD, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Jamoa A. Moberly, Judge.  Affirmed.

William A. Kent for Plaintiff and Appellant.

Koeller, Nebeker, Carlson & Haluck and Zachary M. Schwartz for Defendant and Respondent.

*          *          *

Nearly 15 years after the Orange County Assessor (Assessor) established the base year value used to assess real property taxes against plaintiff William Jefferson & Co., Inc.'s (Jefferson) property, Jefferson appealed to defendant Assessment Appeals Board (Appeals Board) claiming the Assessor made a clerical error in valuing the property. The Appeals Board conducted an evidentiary hearing and denied the appeal on the ground Jefferson had waited too long to challenge the Assessor's base year value determination. The Appeals Board found Jefferson based its appeal not on a clerical error but on the Assessor's error in judging the property's value, and therefore Jefferson failed to comply with Revenue and Taxation Code sections 51.5, subdivision (b), and 80, subdivision (a)(3), which required Jefferson to appeal within four years of the Assessor's base year value determination.[1]

Jefferson filed this action below seeking to compel the Appeals Board to grant Jefferson's appeal and direct the Assessor to change the property's base year value from $305,000 to $271,000. Jefferson, however, failed to address the Appeals Board's determination that it lacked jurisdiction to grant Jefferson's appeal, instead relying on the Assessor's allegedly erroneous property valuation. The trial court granted the Appeals Board summary judgment because Jefferson challenged the merits of the Assessor's valuation and therefore had to bring this action against the County of Orange (County), not the Appeals Board.

We affirm. As explained below, any lawsuit that seeks a property tax reduction by challenging the base year value assigned to an owner's property must be brought as a tax refund action against the county or city that collected the tax, not the local assessment appeals board. Accordingly, the trial court properly determined Jefferson may not maintain this action against the Appeals Board. Jefferson's failure to

---

[1]    All statutory references are to the Revenue and Taxation Code unless otherwise stated.

2

name the proper defendant eliminates the need to address the numerous challenges he asserts to the Appeals Board's decision.

I

FACTS AND PROCEDURAL HISTORY[2]

The property at issue is a single-family home located in Irvine, California. William A. Kent purchased the property for $305,000 in 1990. After several other transfers for which there are no details in the record, Michael Kim sold the property to Gopal Productions, Inc. (Gopal) for $271,000 in December 1992. Gopal recorded the deed transferring the property, but failed to file a change of ownership statement, which would have alerted the Assessor to determine whether the transfer constituted a change of ownership requiring a new base year value for the property.

Gopal filed the change of ownership statement in June 1993 after receiving notice a penalty would be imposed if it did not promptly file the statement. That same month Gopal also recorded a quitclaim deed transferring the property to Jefferson. All parties agree the transfer to Jefferson was not a change of ownership affecting the property's base year value because Gopal and Jefferson were related corporations.

In October 1993, the Assessor sent Gopal a supplemental assessment notice, which acknowledged the December 1992 change of ownership from Kim to

    [2]     Jefferson's opening brief is "seriously defective" because it fails to provide either a statement of facts or a summary of the relevant procedural history. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 868-869; Cal. Rules of Court, rule 8.204(a)(2)(A) & (C).) Jefferson sprinkles a few facts throughout its brief but falls far short of providing the mandatory "summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C).) We are left to determine the fundamental facts and procedural history from our independent review of the record and the Appeal Board's brief. Consequently, Jefferson has waived any objection that we overlooked any disputed or undisputed material facts. (*Lopez v. C.G.M. Development, Inc.* (2002) 101 Cal.App.4th 430, 435, fn. 2.)

Gopal, but notified Gopal the Assessor valued the property at $305,000 at the time of the transfer and therefore would use that figure as the base year value instead of the $271,000 Gopal paid.

In July 2008, Jefferson filed with the Appeals Board an application to change the base year value the Assessor assigned to the property 15 years earlier. At the Appeals Board's evidentiary hearing, Jefferson argued the Assessor made a clerical error in assessing the property at $305,000 instead of the $271,000 purchase price. In April 2009, the Appeals Board issued its decision and findings of fact denying Jefferson's application. Based on sections 51.5, subdivision (b), and 80, subdivision (a)(3), the Appeals Board found it lacked jurisdiction to change the base year value because nearly 15 years had elapsed between the Assessor's base year value determination and Jefferson's application challenging that determination. The Appeals Board denied Jefferson's application without deciding whether the Assessor properly valued the property at $305,000 when Gopal purchased it in December 1992.

In November 2009, Jefferson filed its "Complaint for Damages; Petition for a Writ of Administrative Mandate; Petition for Writ of Mandate" alleging a single cause of action against the Appeals Board. The complaint asked the trial court to direct the Appeals Board to vacate its decision denying Jefferson's application for changed assessment and enter a new decision compelling the Assessor to change the property's base year value to $271,000. The trial court sustained the Appeals Board's demurrer to the Complaint with leave to amend on the ground of uncertainty because the court could not determine the precise nature and basis for Jefferson's claim.

Jefferson then filed the "First Amended Complaint for a Refund of Taxes Improperly Paid," asserting two causes of action against the Appeals Board. The first cause of action alleged the Appeals Board erred in failing to correct a clerical error the Assessor made in setting the property's base year value at $305,000 instead of $271,000. Jefferson therefore sought a refund of taxes improperly paid based on the erroneous base

4

year value and an order requiring the Appeals Board to vacate its decision and enter a new decision setting the property's base year value at $271,000.  The second cause of action alleged a class action seeking a refund for all property owners who were required to pay a fee for the Appeals Board to issue written findings on their appeals.

The Appeals Board sought summary judgment, or alternatively, summary adjudication on several grounds, including that Jefferson sued the wrong party because tax refund actions must be brought against the county that collected the tax, not the local assessment appeals board.  Jefferson opposed the Appeals Board's motion and filed its own motion seeking summary judgment, or alternatively, summary adjudication on each of its claims.  While those motions were pending, Jefferson and the Appeals Board filed a stipulation and order dismissing Jefferson's class action allegations.

In September 2013, the trial court granted the Appeals Board's motion on the ground Jefferson may not maintain a tax refund action against the Appeals Board, thereby rendering Jefferson's summary judgment motion moot.  The court also noted it found each of Jefferson's claims lacked merit.  The court entered judgment in the Appeals Board's favor in October 2013 and Jefferson timely appealed.

II

DISCUSSION

A.    *Summary Judgment Standards*

"""The purpose of a summary judgment proceeding is to permit a party to show that *material* factual claims arising from the pleadings need not be tried because they are not in dispute." [Citations.]'  [Citations.]" (*Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 136, original italics.)  A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit.  (*Ibid*.)  The defendant can meet that burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim.

5

(*Ibid.*; Code Civ. Proc., § 437c, subd. (p)(2).) To meet this burden, the defendant must present evidence sufficient to show he or she is entitled to judgment as a matter of law. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 847-848.) Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing a triable issue exists on one or more material facts. (*Ahn*, at p. 136; Code Civ. Proc., § 437c, subd. (p)(2).) We review a trial court's ruling on a summary judgment motion de novo. (*Ahn*, at p. 136.)

B.      *Principles Governing Owner Challenges to Property Tax Assessments*

In 1978, Proposition 13 amended the California Constitution to limit real property taxes to one percent of a property's base year value adjusted annually by an inflation factor not to exceed two percent of the prior year's value. (Cal. Const., art. XIII A, §§ 1, subd. (a), 2, subd. (b); *Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948, 956 (*Sunrise*); *Sea World, Inc. v. County of San Diego* (1994) 27 Cal.App.4th 1390, 1398 (*Sea World*).) Proposition 13 set the base year value used to determine each year's taxes at the value the local assessor set on the 1975-1976 tax bill. (*Sea World*, at p. 1398.) A property's base year value may be reestablished only if the property is purchased, is newly constructed, or there is a change in ownership. (*Sunrise*, at p. 956.)

The California Constitution establishes local boards of equalization (either a county assessment appeals board or the board of supervisors) to hear appeals from decisions of the local tax assessor. (Cal. Const., art. XIII, § 16; *Sunrise*, *supra*, 58 Cal.App.4th at p. 958.) The local board may hear appeals concerning not only the assessed value, but also the assessor's determination on whether a change of ownership has occurred. (*Sunrise*, at p. 958; § 1605.5.) A property owner initiates the appeals process by filing a written application to change the assessment with the local assessment appeals board. (*Sunrise*, at p. 958; § 1603.) The local board then must conduct a public

6

hearing to receive evidence and decide the appeal. (*Sunrise*, at p. 958; §§ 1604, 1605.4, 1609.) Section 80, subdivision (a)(3) (Section 80(a)(3)), requires a property owner to challenge the local assessor's base year value determination within four years of the assessor's determination. (*Sunrise*, at p. 956.)

Section 51.5, however, "provides an independent mechanism for correcting base year values apart from the normal appeals procedure." (*Sunrise*, *supra*, 58 Cal.App.4th at p. 960; *Sea World*, *supra*, 27 Cal.App.4th at p. 1403.) The statute imposes a ministerial duty on an assessor to correct an error in the determination of a base year value during the assessment year in which the error is discovered. (*Sunrise*, at p. 960.) That duty arises whether the assessor independently discovers the error or the taxpayer brings it to the assessor's attention through an application for changed assessment or other means. (*Id*. at p. 960, fn. 5.)

Depending on the nature of the error, section 51.5 establishes time limits on an assessor's authority to correct a base year value. If the error "'involves the exercise of an assessor's judgment as to value,'" section 51.5, subdivision (b) (Section 51.5(b)), authorizes the assessor to correct the error up to four years after the base year value was first established. (*Kuperman v. San Diego County Assessment Appeals Bd. No. 1* (2006) 137 Cal.App.4th 918, 924, 929 (*Kuperman*).) If the error "'does not involve the exercise of an assessor's judgment as to value,'" section 51.5, subdivision (a) (Section 51.5(a)), requires the assessor to correct the error during the year in which it is discovered regardless of how much time has elapsed since the base year value was first established. (*Kuperman*, at pp. 924, 929; *Sunrise*, *supra*, 58 Cal.App.4th at pp. 959-960.)

Judgmental errors subject to the four-year time limit typically involve a claim the assessor's determination of the base year value failed to reflect the property's fair market value. (*Kuperman*, *supra*, 137 Cal.App.4th at pp. 926-927.) Nonjudgmental errors subject to correction at any time include (1) "an assessor's erroneous determination that a change of ownership occurred" (*id*. at p. 926; *Sunrise*, *supra*, 58 Cal.App.4th at

7

p. 957); (2) "the assessor's failure to set a new base year value upon a change of ownership" (*Kuperman*, at p. 926); (3) "defects of a mechanical, mathematical, or clerical nature, not involving judgment as to value, where it can be shown from papers in the assessor's office or other evidence that the defect resulted in a base year value that was not intended by the assessor at the time it was determined" (§ 51.5, subds. (c) & (f)(2); *Kuperman*, at p. 926); and (4) "errors or omissions that result from the taxpayer's fraud, concealment, misrepresentation, or failure to comply with legal requirements for furnishing information" (*Kuperman*, at p. 926; see § 51.5, subd. (c)).

A property owner must be aware of the distinction between a successful application that reduces a base year value and the property owner's right to a refund of any excess taxes paid based on the erroneous base year value: "The base-year value is a control figure from which an assessment is determined. The correction of the base-year value allows the assessor to determine whether there has been an overassessment or an underassessment. Thereafter, an application must be made for a refund.' [Citation.]" (*Sunrise*, *supra*, 58 Cal.App.4th at p. 956.)

A property owner must exhaust this administrative appeals process before seeking judicial relief, and the failure to do so will result in dismissal of the property owner's lawsuit. (*Sunrise*, *supra*, 58 Cal.App.4th at p. 958.) Although a local assessment appeals board decision arises from an administrative hearing process, the mechanism for seeking judicial review of the decision "'is significantly different from that of other administrative agency decisions. Ordinarily the aggrieved taxpayer's remedy is not to seek administrative mandate pursuant to Code of Civil Procedure section 1094.5, but to pay the tax and file suit in superior court for a refund. [Citations.]' [Citation.]" (*Little v. Los Angeles County Assessment Appeals Bd.* (2007) 155 Cal.App.4th 915, 923 (*Little*).) Indeed, "[t]he exclusive means of review of tax proceedings in California has been the remedy of suit to recover alleged overpayments, and the power of the state to provide such suit as the exclusive remedy is unquestioned."

8

(*County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 671 (*County of Sacramento*).)

Because a tax refund action provides property owners with an adequate remedy at law, equitable actions for mandamus, injunctive, and declaratory relief generally are unavailable to obtain judicial review of a local assessment appeals board decision. (*Schoenberg v. County of Los Angeles Assessment Appeals Bd.* (2009) 179 Cal.App.4th 1347, 1355 (*Schoenberg*); *Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 400-401 (*Merced*); *County of Sacramento*, *supra*, 32 Cal.App.3d at pp. 672-673.)

This limitation on taxpayer actions challenging local assessment appeals board decisions derives from the California Constitution and the Revenue and Taxation Code. The California Constitution states, "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." (Cal. Const., art. XIII, § 32.) Similarly, the Revenue and Taxation Code provides, "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected." (§ 4807.) The policy behind these provisions is "to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted." (*Merced*, *supra*, 218 Cal.App.3d at p. 400.)

A tax refund action must be brought against the county or city that collected the tax. (§ 5140 ["The person who paid the tax . . . may bring an action only in the superior court . . . against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim . . ."].) A tax refund action may not be maintained against the local assessment appeals

9

board because it "is a separate and distinct constitutional entity from the [c]ounty [or city that collected the tax]." (*Schoenberg*, *supra*, 179 Cal.App.4th at p. 1355.)

C.      *The Trial Court Correctly Determined Jefferson Brought Suit Against the Wrong Party*

The trial court granted the Appeals Board summary judgment on the ground a tax refund action may not be maintained against a local assessment appeals board. (See § 5140; *Schoenberg*, *supra*, 179 Cal.App.4th at p. 1355.) Jefferson accepts the rule but disagrees with the trial court's conclusion it applied here because Jefferson claims its action is not a lawsuit for a tax refund. According to Jefferson, it only sought to correct an erroneous base year value determination and no refunds were involved in the proceedings. Jefferson's contention, however, misconstrues the scope of the rule making a refund action the exclusive means for challenging an assessment appeals board decision and also mischaracterizes Jefferson's claims.

Any action challenging the merits of an assessor's base year value determination is a refund action that must be brought against the county or city that collected the tax even if the action does not expressly seek a refund or disclaims the right to a refund. (See *Schoenberg*, *supra*, 179 Cal.App.4th at p. 1355 [tax refund action is exclusive means to challenge merits of local assessment board decision "even if the effect of a proposed mandate order would not be an immediate refund, but only the potential for a future refund"]; *Little*, *supra*, 155 Cal.App.4th at pp. 922-925; *Merced*, *supra*, 218 Cal.App.3d at pp. 400-401.)

In *Little*, a property owner reapplied to the local assessment appeals board to reduce his property's base year value on the ground the assessor overvalued the property. The appeals board determined the base year value was proper when it denied the owner's application for changed assessment several years earlier and the owner could not seek reconsideration through a second application. The property owner sought a writ of mandate compelling the assessor to correct the base year value and to use the corrected

10

value in making future assessments. The assessor demurred to the petition, arguing mandamus did not lie to review the merits of its base year value determination because a tax refund action was an adequate remedy at law. The trial court overruled the demurrer, but later denied the petition on the merits following a court trial. (*Little*, *supra*, 155 Cal.App.4th at pp. 919-922.)

The Court of Appeal affirmed, but concluded the trial court should have sustained the assessor's demurrer without leave to amend. Even though the property owner did not expressly seek a refund, the *Little* court explained the owner's action constituted a refund action because it sought to reduce the owner's taxes by challenging the assessor's base year value determination. Mandamus therefore did not lie to compel the assessor to change the property's base year value. (*Little*, *supra*, 155 Cal.App.4th at pp. 922-925.)

In *Merced*, a group of taxpayers brought a petition for writ of mandate to compel the local assessor to correct their base year values because the assessor had used an improper method to retroactively set those values. In their petition, the taxpayers expressly disclaimed any right to tax refunds and explained they sought to "'correct[] . . . wholesale assessment irregularities for application in the future only.'" (*Merced*, *supra*, 218 Cal.App.3d at p. 398.) The trial court granted the taxpayers' petition. (*Ibid*.)

The Court of Appeal reversed, explaining mandamus did not lie to correct an erroneous base year value or assessment. (*Merced*, *supra*, 218 Cal.App.3d at p. 400.) Despite the taxpayers' express disclaimer of any right to tax refunds, the *Merced* court concluded the action must be brought as a tax refund action because it sought to lower the taxpayers' taxes by challenging the assessor's base year value determination. (*Id*. at p. 401.)

Here, Jefferson's action is a tax refund action not only because it expressly seeks a tax refund, but also because it seeks to reduce Jefferson's taxes by challenging the merits of the Assessor's decision setting the property's base year value at $305,000.

11

Jefferson's operative pleading is entitled "First Amended Complaint for a Refund of Taxes Improperly Paid" and it prays for a "refund of taxes improperly paid." (Capitalization omitted.) Jefferson also seeks to compel the Appeals Board to vacate its decision denying Jefferson's application for changed assessment and to issue a new decision granting the application and directing the Assessor to set the property's base year value at $271,000. Jefferson seeks this relief on the ground the Assessor failed to accept the $271,000 purchase price as the property's presumptive fair market value when Gopal purchased it in 1992, and the Assessor failed to present any evidence overcoming that presumption and establishing $305,000 as the fair market value to be used as the base year value. Jefferson does not dispute its action challenges the merits of the Assessor's base year value determination. Accordingly, *Schoenberg*, *Little*, and *Merced* compel us to conclude this action must be treated as a tax refund action that Jefferson may not maintain against the Appeals Board.

Jefferson argues the *Sunrise* opinion allows him to pursue a mandamus action compelling the Appeals Board to vacate its decision denying Jefferson's application for changed assessment and issue a new decision directing the Assessor to change the property's base year value from $305,000 to $271,000. *Sunrise* does not apply because Jefferson expressly requested a refund and *Sunrise* did not involve a challenge to the merits of the assessor's base year value determination.

In *Sunrise*, a property owner applied to the local assessment appeals board to reduce his property's base year value several years after the assessor established a new base year value for the property based on a change of ownership. Without taking any evidence, the appeals board refused to hear the owner's challenge to the assessor's change of ownership determination because the board found the four-year time limit in Section 80(a)(3) deprived the board of jurisdiction to grant the application. The property owner filed a petition for writ of mandate to compel the assessor to restore the property's original base year value, or alternatively to compel the appeals board to hear the

12

application on its merits. The property owner argued the assessor's change of ownership determination did not involve the assessor's exercise of judgment as to the property's value, and therefore Section 51.5(a) required the assessor to correct the error during the assessment year in which it was discovered regardless of how much time had elapsed. The trial court granted the petition and ordered the assessor to restore the original base year value. (*Sunrise*, *supra*, 58 Cal.App.4th at pp. 952-954.)

The *Sunrise* court reversed and remanded for the trial court to enter a new judgment issuing a writ of mandate compelling the appeals board to vacate its original decision and conduct a new hearing to decide whether a change of ownership had occurred that required the assessor to establish a new base year value. (*Sunrise*, *supra*, 58 Cal.App.4th at pp. 961-962.) Although a tax refund action is generally the exclusive means for challenging an appeals board's decision, the *Sunrise* court explained either traditional or administrative mandamus lies to compel the board to hold a hearing when the board is empowered to decide an issue in the first instance but erroneously fails or refuses to do so. The *Sunrise* court concluded the assessor's change of ownership determination could be corrected at any time under section 51.5(a) because it did not involve the assessor's exercise of judgment as to the property's value. The appeal board therefore erred in concluding it lacked jurisdiction to decide the change of ownership dispute. (*Sunrise*, at p. 957.)

The Court of Appeal, however, emphasized that neither it nor the trial court could decide whether the assessor erred in determining a change of ownership had occurred because the governing statutes required the appeals board to decide the issue. The *Sunrise* court explained the proper remedy was to order the appeals board to perform its statutorily-mandated duty and decide the change of ownership dispute because mandamus lies to compel an agency to perform its duties, but not to control the agency's discretion in performing those duties. The trial court therefore erred in deciding the application on its merits and ordering the assessor to change the base year value because

13

a court may not step into an agency's shoes and perform its duties. Instead, the trial court should have ordered the agency to conduct a hearing, and if a lawsuit followed, then review the agency's decision under the established standard of review once the administrative process had fully run its course. (*Sunrise*, *supra*, 58 Cal.App.4th at pp. 955, 960-961.)

Here, the Appeals Board conducted a hearing on Jefferson's application challenging the base year value the Assessor established after Kim sold the property to Gopal in 1992. Based on the evidence it received from both parties, the Appeals Board determined it lacked jurisdiction to reach the application's merits because Jefferson filed the application nearly 15 years after the Assessor made its base year value determination. The Appeals Board explained the four-year time limit in Sections 80(a)(3) and 51.5(b) applied to Jefferson's application because the Assessor acknowledged a change of ownership occurred when Kim transferred the property to Gopal, and therefore the only dispute involved the Assessor's exercise of judgment as to the property's value when that transfer occurred. Because the dispute involved the Assessor's exercise of judgment as to value, the Appeals Board concluded Section 51.5(a) did not apply to correct certain nonjudgmental errors at any time.

Jefferson never has challenged the Appeals Board's determination it lacked jurisdiction to hear its application. Indeed, Jefferson's pleadings and briefs never acknowledged the Appeals Board denied its application based on a lack of jurisdiction rather than on the merits. Jefferson consistently has challenged the Assessor's determination the property's value when Kim transferred it to Gopal was $305,000 instead of $271,000, and it consistently has asked for an order compelling the Appeals Board to direct the Assessor to change the base year value from $305,000 to $271,000. That is a challenge to the merits of the Assessor's base year value determination that must have been brought as a tax refund action against the County, not the Appeals Board. Jefferson's petition for writ of mandate did not seek to direct the Appeals Board to

14

conduct a new hearing to decide the application on its merits, and therefore *Sunrise* does not apply.

Jefferson contends he originally sought a writ of mandate against the Appeals Board, but the trial court's erroneous decision sustaining the Appeals Board's demurrer to the original pleading forced Jefferson to bring this action as a tax refund action. We reject this argument for two reasons. First, Jefferson forfeited this argument because its opening brief does not challenge the trial court's demurrer ruling or otherwise argue the trial court forced it to bring this action as a tax refund action. (See, e.g., *Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["[a]rguments presented for the first time in an appellant's reply brief are considered waived"]; *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1064, fn. 2 ["argument is forfeited" where "it is raised for the first time in [appellant's] reply brief without a showing of good cause"].) Jefferson did not even include the trial court's ruling on the demurrer in the appellant's appendix it filed.

We also reject this argument because it misconstrues the trial court's ruling. Jefferson's original pleading sought a writ of mandate and damages based on the Appeals Board's erroneous denial of the application for changed assessment. The Appeals Board demurred on a wide variety of grounds, but the trial court sustained the demurrer solely on the ground of uncertainty. The court explained it appeared Jefferson sought a tax refund, but the court could not determine the precise nature of Jefferson's claim and therefore could not determine whether it adequately alleged facts to state any particular claim. The court ordered Jefferson to amend its pleading to clearly state the nature and basis for its claim and the relief it was seeking. But the court neither ordered Jefferson to allege any particular claim nor prohibited Jefferson from alleging any particular claim. Moreover, we note the prayer in Jefferson's original pleading sought a writ of mandate compelling the Appeals Board to direct the Assessor to change the property's base year value from $305,000 to $271,000. As explained above, the original pleading did not

15

challenge the Appeals Board's decision it lacked jurisdiction and did not seek a writ of mandate ordering the Appeals Board to conduct a new hearing to decide the application on its merits.

In bringing its summary judgment motion, the Appeals Board could challenge only the specific claims Jefferson alleged in its operative pleading and certainly Jefferson could not oppose the motion based on a claim it failed to allege. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253 ["'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers'"]; *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1254 ["""If the motion for summary judgment presents evidence sufficient to disprove the plaintiff's claims, as opposed to merely attacking the sufficiency of the complaint, the plaintiff forfeits an opportunity to amend to state new claims by failing to request it"'"].) Jefferson never sought leave to allege a claim challenging the Appeals Board's decision that it lacked jurisdiction and therefore neither the Appeals Board nor the trial court was required to address that issue.[3]

Jefferson spent the majority of its briefs arguing the merits of the Assessor's base year value determination and various other challenges to the Appeals Board's decision. We do not reach any of those challenges because we affirm the trial court's decision granting the Appeals Board summary judgment on the ground Jefferson

---

[3]     Jefferson argues summary judgment is not an available procedure in actions to review determinations by an assessment appeals board. According to Jefferson, the entire Code of Civil Procedure does not apply to actions involving assessment appeals boards because Code of Civil Procedure section 30 purportedly limits that code's application to "civil actions for the enforcement or protection of private rights and the redress or prevention of private wrongs." (Capitalization omitted.) Code of Civil Procedure section 30, however, states no such thing and Jefferson fails to cite any authority that supports this contention. Code of Civil Procedure section 30 states, "A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." Moreover, Jefferson forfeited this argument and is estopped from asserting it because Jefferson did not raise it.

16

brought this action against the wrong party. We also do not address the viability of Jefferson's claims against the County because he never sought leave to add the County as a defendant.[4]

III

DISPOSITION

The judgment is affirmed. The Appeals Board shall recover its costs on appeal.

ARONSON, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.

---

[4]     The Appeals Board argues all claims against either it or the County are barred by the statute of limitations, but the Appeals Board did not move for summary judgment based on the statute of limitations. We therefore do not address whether any of Jefferson's claims are time barred.

Filed 7/22/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM JEFFERSON & CO., INC., | |
| Plaintiff and Appellant, | G049344 |
| v. | (Super. Ct. No. 30-2009-00320915) |
| ASSESSMENT APPEALS BOARD, | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendant and Respondent. | |

     Pursuant to California Rules of Court, rule 8.1105(c), and for good cause shown, defendant and respondent Assessment Appeals Board's request to publish the opinion filed on June 25, 2014 is GRANTED.  The entire opinion is ordered published in the Official Reports.  (Cal. Rules of Court, rule 8.1105(b).).

ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.