Filed 4/15/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CARLOS CARACHURE et al., | B336778 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCP03478) |
| v. | |
| CITY OF AZUSA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge. Reversed.

Benink & Slavens, Eric J. Benink, Vincent D. Slavens; Kearney Littlefield, Thomas A. Kearney, and Prescott W. Littlefield for Plaintiffs and Appellants.

Best Best & Krieger, Lutfi Kharuf, Dean S. Atyia, Gregg W. Kettles, and Christina Abbate for Defendant and Respondent.

Jarvis Fay and Benjamin P. Fay for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

_____

# INTRODUCTION

Carlos and Ana Carachure filed this action for a writ of mandate against the City of Azusa, alleging the City violated article XIII D of the California Constitution by charging sewer and trash franchise fees that exceeded the cost of providing those services and by using the fees collected to fund general city services. The City argued the Carachures failed to exhaust their administrative remedies because they did not follow the statutory procedures for a refund, which require them to pay the fees under protest and file a claim for a refund. The trial court agreed with the City and entered judgment in its favor. Because the Carachures' constitutional challenge to the City's collection and use of franchise fees seeks relief outside the scope of the statutory claims procedure for refunds, we reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

A.      *The City Collects Franchise Fees for Sewer and Trash Services*

The City provides water, sewer, and trash services to its residents.[1] The City provides sewer services through the Azusa Public Works Department (a "standalone enterprise," according to the City's expert) and contracts with a private waste hauler for

---

[1]      The parties use the terms "sewer" and "wastewater" interchangeably to refer to residential sewage; they use "trash," "solid waste," and "refuse" to refer to residential garbage. We use the terms "sewer" and "trash."

trash collection. In 2011 the city council passed an ordinance authorizing the City to impose monthly sewer fees. The City "charges its sewer utility a sewer franchise fee equal to approximately 2% of its sewer utility revenue." In 2022 the City passed a resolution setting rates for trash collection that include a "franchise fee equal to 10% of the rate for trash service." The City collects trash fees from customers, pays the private waste hauler, and retains the 10 percent franchise fee.[2]

The City maintains enterprise funds with separate accounting procedures and financial statements for each utility.[3] Funds in the sewer fund and the trash fund "are intended only to be spent for costs incurred for providing sewer or solid waste service, respectively." The franchise fees are designed to reimburse the City's general fund for expenditures associated with providing sewer and trash service, such as for facilities, contract administration, road impacts, and vehicle maintenance.

---

[2] "Private utilities pay public authorities 'franchise fees' to use government land such as streets, or for rights-of-way to provide utility service." (*Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 Cal.App.4th 637, 639.) The fees are sometimes called "in-lieu" fees when paid by a municipal utility rather than a private utility. (See *ibid.*)

[3] "An enterprise fund is a budgetary device 'used to track monies received and expended for municipal services where fees or charges to the users of those services pay wholly or in part for such services.'" (*Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 5-6.)

Every year the City transfers franchise fee revenue from the sewer and trash funds to the City's general fund.[4]

> B. *The Trial Court Denies the Carachures' Petition for Writ of Mandate, Enters Judgment for the City, and Denies the Carachures' Posttrial Motion*

In September 2022 the Carachures filed this action against the City. They alleged that they lived in the City and paid franchise fees and that the City violated article XIII D of the California Constitution (Proposition 218) by embedding "franchise fee surcharges in its solid waste [trash] fees to fund transfers to its general fund to pay for general government services unrelated to the provision of solid waste service." The Carachures also alleged the City violated Proposition 218 by using excess revenues generated by the sewer franchise fee to fund "general government services unrelated to the provision of sewer service." The Carachures sought a writ of mandate directing the City to "cease further imposition and collection of excessive solid waste service fees" and to "return all franchise fees transferred from its solid waste service fund . . . to its general fund during the past three years." They also sought a declaration the City's "solid waste service fees have violated and continue to violate Proposition 218."

The City argued that the Carachures could not challenge the City's imposition and use of the franchise fees until they

---

[4] An "annual budgetary transfer from the utility's enterprise fund to the city's general fund" is a "practice common among municipalities that operate utilities." (*Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 5.)

4

exhausted their administrative remedies by "paying under protest" and that, on the merits, the City's collection and transfer of the fees did not violate Proposition 218. The trial court ruled that Health and Safety Code section 5472[5] "requires a person who objects to the franchise fees to pay the fees under protest pursuant to the procedures set forth in Article 2, Chapter 5, Part 9 of Division 1 of the Revenue and Taxation Code" and that, though the Carachures did "not expressly seek a refund of franchise fees," they claimed the "fees were illegally collected or assessed" and therefore "were required to file a claim for refund with the City before seeking judicial relief." The trial court denied the Carachures' petition for writ of mandate and entered judgment for the City.

The Carachures filed a motion for a new trial and to vacate the judgment. (Code Civ. Proc., §§ 657, 663.) They argued that the trial court relied on inapplicable property tax cases and the current version of the Revenue and Taxation Code, rather than the 1949 version in effect when section 5472 was enacted, and that section 5472 did not apply to their claims under article XIII D, section 6(b)(2) of the California Constitution for diversion of fee revenue. The trial court denied the motion. The Carachures timely appealed from the judgment and the order denying the motion to vacate the judgment and the motion for a new trial.[6]

---

[5]    Undesignated statutory references are to the Health and Safety Code.

[6]    A judgment denying a petition for writ of mandate is appealable. (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 654.) So is an order denying a motion under Code of Civil

## DISCUSSION

### A.     *Proposition 218*

"In 1996, the voters adopted Proposition 218, known as the "'Right to Vote on Taxes Act."'" (*Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 10; see *Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 380; *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 835.)  Proposition 218 added article XIII D to the California Constitution, which "'limits the authority of local governments to assess taxes and other charges on real property.'" (*Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 785; see *Howard Jarvis Taxpayers Assn. v. Coachella Valley Water Dist.* (2025) 108 Cal.App.5th 485.)  Article XIII D provides that revenues from property-related fees and charges "shall not exceed the funds required to provide the property related service" and "shall not be used for any purpose other than that for which the fee or charge was imposed."  (Cal. Const., art. XIII D, § 6, subd. (b)(1), (2); see *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 Cal.App.4th 637, 648 (*Roseville*) ["the section 6(b) fee or charge must reasonably represent the cost of providing service"].)

### B.     *The Statutory Scheme for Imposing and Protesting Sewer and Trash Fees*

The Health and Safety Code authorizes a city to "prescribe, revise and collect" fees for services in connection with a city's

---

Procedure section 663 to vacate a judgment.  (*Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 127; *Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 291.)  An order denying a motion for new trial, however, is not.  (*Meinhardt*, at p. 653.)

sewer and sanitation (trash collection) systems.  The city council can set such fees in an ordinance or resolution approved by a two-thirds vote.  (See §§ 5470, subd. (e), 5471.)  A person who objects to fees may pay under protest:  "After fees, rates, tolls, rentals or other charges are fixed pursuant to this article, any person may pay such fees, rates, tolls, rentals or other charges under protest and bring an action against the city . . . in the superior court to recover any money which the [city council] refuses to refund.  Payments made and actions brought under this section, shall be made and brought in the manner provided for payment of taxes under protest and actions for refund thereof in Article 2, Chapter 5, Part 9, of Division 1 of the Revenue and Taxation Code, insofar as those provisions are applicable."  (§ 5472.)

Article 2, Chapter 5, Part 9, of Division 1 of the Revenue and Taxation Code (Article 2), titled "Refund Actions by Taxpayers," prescribes the procedures for seeking a refund of property taxes.  Revenue and Taxation Code section 5142, subdivision (a), provides:  "No action shall be commenced or maintained under this article . . . unless a claim for refund has first been filed pursuant to Article 1 (commencing with [Revenue and Taxation Code] Section 5096).  [¶]  No recovery shall be allowed in any refund action upon any ground not specified in the refund claim."  Article 1, titled "Refunds Generally," provides a claim for a refund must be written, verified by the taxpayer, and filed within four years of paying the tax. (Rev. & Tax. Code, §§ 5097, subd. (a)(1), (2), 5097.02.)  The claim must specify "[w]hether the whole assessment is claimed to be void or, if only a part, what portion" and the "grounds on which the claim is founded."  (Rev. & Tax. Code, § 5097.02.)  If the city council does not "mail notice of its action on a claim for refund within

7

six months after the claim is filed," the claimant may "consider the claim rejected." (Rev. & Tax. Code, § 5141.) Within six months of the date the city council rejects a claim, a person may bring an action in superior court against "a city to recover a tax which . . . the city council of the city has refused to refund." (Rev. & Tax. Code, § 5140.)

The statutory framework is a form of the "pay first" rule. "'A taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax. This rule, commonly known as "pay first, litigate later," is well established . . . .'" (*Mojave Pistachios, LLC v. Superior Court* (2024) 99 Cal.App.5th 605, 625; see *Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 90.) "'A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid.'" (*Mojave Pistachios,* at p. 626.) The "pay first" rule prevents "courts from unduly interfering with the flow of tax dollars that fund government operations, thereby preventing the disruption of essential public services." (*Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1135; see *Andal*, at p. 90.)[7]

---

[7] "The constitutional source of the 'pay first' rule is article XIII, section 32 of the California Constitution: 'No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature.'" (*Mojave Pistachios, LLC v. Superior Court*, *supra*, 99 Cal.App.5th at pp. 625-626.) Although article XIII, section 32 applies only to actions against the state, the Legislature has in various statutes (including Revenue and Taxation Code section 5142) extended

8

C. *The Carachures Did Not Have To File a Claim for a Refund Before Bringing This Action*

1. *Applicable Law and Standard of Review*

"Generally, 'a party must exhaust administrative remedies before resorting to the courts. [Citations.] Under this rule, an administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures."'" (*Plantier v. Ramona Municipal Water Dist.*, *supra*, 7 Cal.5th at p. 382; see *Hill RHF Housing Partners, L.P. v. City of Los Angeles* (2021) 12 Cal.5th 458, 477.) "This requirement "'is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary).'"" (*Briley v. City of West Covina* (2021) 66 Cal.App.5th 119, 128; see *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.)

"We review the application of the exhaustion doctrine to undisputed facts de novo." (*Briley v. City of West Covina*, *supra*, 66 Cal.App.5th at p. 128; see *Monterey Coastkeeper v. Monterey County Water Resources Agency* (2017) 18 Cal.App.5th 1, 12 ["'We apply a de novo standard of review to the legal question of whether the doctrine of exhaustion of administrative remedies applies in a given case.'"].) We also review questions of statutory interpretation de novo. (*Childhelp, Inc. v. City of Los Angeles*

---

the "pay first" rule to local governments. (See *County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1116-1117.)

9

(2023) 91 Cal.App.5th 224, 235; see *California Privacy Protection Agency v. Superior Court* (2024) 99 Cal.App.5th 705, 721-722 [where "'"the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo"'"].)

> 2. *The Carachures' Constitutional Challenge Is Not an Action for a Refund Governed by Section 5472 and Article 2*

The Carachures paid the sewer and trash fees, but they did not protest. They concede their "failure to pay under protest pursuant to section 5472 precludes them from receiving a refund." (See *Padilla v. City of San Jose* (2022) 78 Cal.App.5th 1073, 1077-1078 ["Payment under protest as described by section 5472 has been found to be a prerequisite to bringing an action for a refund of sewer charges."]; *Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 201 [same].) But they argue they did not have to pay under protest before seeking equitable relief to "stop the City's ongoing violations of Proposition 218." The Carachures are correct.

The plain language of section 5472 and Article 2 describes an administrative process for seeking a refund of fees paid, not for challenging the constitutionality of a city's system for charging or spending fees. (See *Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490 ["If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls."]; *Traiman v. Alameda Unified School Dist.* (2023) 94 Cal.App.5th 89, 96 [same].) Section 5472 states a person must pay sewer or sanitation fees under protest as a prerequisite to filing an action "to recover any money which the legislative body

10

[here, the city council] refuses to refund." Article 2 provides procedures for submitting a "claim for refund" (Rev. & Tax. Code, §§ 5141, 5142, subd. (a)) or "refund claim" (Rev. & Tax. Code, § 5142, subd. (a)) and for filing a "refund action" (Rev. & Tax. Code, § 5142, subd. (a)) in superior court "to recover a tax" the city council "refused to refund" (Rev. & Tax. Code, § 5140). The Carachures, however, are not doing or seeking any of those things.

In a similar factual scenario the court in *Roseville*, *supra,* 97 Cal.App.4th 637 concluded the plaintiffs in that case did not have to exhaust their administrative remedies. In *Roseville* the plaintiffs argued, as the Carachures argue here, the city in that case violated Proposition 218 by charging utility ratepayers franchise fees "not tied properly to the cost of providing" utility services. (*Roseville*, at p. 639.) The plaintiffs "sought declaratory relief, injunctive relief, and a writ of mandate"; they "initially had also sought a refund, but they abandoned that claim." (*Ibid.*) Also as in this case, the city in *Roseville* argued that "plaintiffs failed to exhaust their administrative remedies, and that the trial court lacked jurisdiction to entertain a suit in equity because plaintiffs had the adequate legal remedy of a refund." (*Ibid.*) The court in *Roseville* held "the legal validity of the in-lieu fee is a question properly raised through an action seeking declaratory, injunctive and mandate relief; to the extent the complaint seeks a judicial determination of the legal validity of the in-lieu fee, it does not involve an issue subject to determination through the administrative refund remedy available to plaintiffs." (*Ibid.*)

The court in *Roseville* relied on *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 314, where the Supreme Court held a taxpayer's failure to exhaust administrative refund

11

remedies did not bar his challenge to a policy of the State Board of Equalization.  In *Agnew* a purchaser of two racehorses challenged the Board's policy that required a taxpayer to pay not only the sales tax due, but also accrued interest, before the Board would consider an administrative claim for a tax refund.  (*Id.* at p. 313.)  The taxpayer paid the sales tax and filed refund claims with the Board.  (*Id.* at p. 315.)  Before the Board ruled on the refund requests, however, the taxpayer filed an action in superior court for declaratory relief.  (*Id.* at pp. 315, 320.)  The taxpayer sought a declaration requiring the Board to "refrain from requiring payment of interest prior to acting upon a refund request in those circumstances when the Sales or Use Tax has been paid in full," as well as declarations and orders requiring the Board to act on the taxpayer's refund requests and segregate or return the amount the taxpayer paid in interest.  (*Id.* at pp. 315-316.)

The Board filed a demurrer in the declaratory relief action, arguing among other things that the taxpayer did not exhaust his administrative remedies and that "a tax refund action is the exclusive means of obtaining judicial review of state tax proceedings."  (*Agnew v. State Bd. of Equalization*, *supra*, 21 Cal.4th at p. 316.)  The taxpayer conceded that, under Revenue and Taxation Code section 6932, he had to "file a claim for refund with the Board before initiating litigation to recover a tax that allegedly has been wrongfully paid or collected."  (*Agnew*, at p. 317.)[8]  The taxpayer "disclaimed any intent to challenge the

---

[8]     Revenue and Taxation Code section 6932 states:  "No suit or proceeding shall be maintained in any court for the recovery of any amount alleged to have been erroneously or illegally determined or collected unless a claim for refund or credit has

12

propriety of any tax imposed on him, however, stating that he sought only to determine the legality of the Board's position that a tax may not be challenged or refunded unless both the tax and the accrued interest have been paid in full." (*Ibid.*)

Reversing the trial court's order sustaining the demurrer, the Supreme Court stated that, "[b]ecause the Board had not yet ruled on plaintiff's refund requests, arguably his declaratory relief action was premature. However, it was so only insofar as it sought a refund of taxes . . . . To the extent that the complaint sought a judicial determination of the validity of the Board's interest prepayment policy it did not involve any issue subject to determination through the administrative refund remedy available to plaintiff." (*Agnew v. State Bd. of Equalization, supra*, 21 Cal.4th at p. 320.) Although portions of the declaratory relief action relating to the taxpayer's payment of interest were moot, the portion of the action seeking "a declaration of the validity of the Board's policy of requiring payment of accrued interest on a tax deficiency before it will consider a refund claim" was "viable." (*Ibid.*) The issue of the validity of the Board's policy was "not one that could be raised in . . . superior court" refund actions because "only grounds set forth in the administrative refund claim may be asserted in those actions." Thus, "consideration of the validity of the Board's policy" was "a question properly raised through a declaratory relief action"

been duly filed pursuant to Article 1 (commencing with Section 6901)."

13

and was "not barred . . . by a failure to exhaust administrative remedies." (*Ibid.*)[9]

Courts in other cases have similarly held a plaintiff challenging an ordinance as unconstitutional need not pursue an administrative refund remedy. For example, in *Andal v. City of Stockton, supra*, 137 Cal.App.4th 86 the plaintiffs brought a declaratory relief action claiming an ordinance imposing a fee for the city's 911 communication ordinance violated Proposition 218. (*Id.* at p. 89.) As in this case, the plaintiffs paid the fee, did not seek a refund, and sought "only to have the *future* collection of the fee declared invalid." (*Id.* at pp. 90-91.) The trial court sustained the city's demurrer on the ground the plaintiffs did not exhaust the ordinance's administrative remedies, which allowed a fee payer to submit a written claim for a refund of any payment overpaid or erroneously or illegally collected and authorized an

---

[9] The City attempts to distinguish *Roseville* and *Agnew* by asserting the court in *Roseville* addressed the exhaustion of administrative remedies issue in a "one-sentence rejection" that relied almost entirely on *Agnew v. State Bd. of Equalization*, *supra*, 21 Cal.4th 310. The City argues, in turn, *Agnew* was decided before *Rickley v. County of Los Angeles* (2004) 114 Cal.App.4th 1002 (a case we will discuss), which according to the City "refused to extend *Agnew* to excuse plaintiff taxpayer's failure to exhaust administrative remedies." It is true the court's opinion in *Roseville* discussed exhaustion of administrative remedies only briefly; it is not true, however, *Rickley* limited *Agnew*'s validity and applicability. *Rickley* distinguished *Agnew* on a ground unrelated to exhaustion of administrative remedies: The court in *Rickley* stated *Agnew* "involved the imposition of interest on an assessed and delinquent sales and use tax," rather than the imposition of penalties on delinquent real property taxes. (*Rickley*, at p. 1011.)

administrative appeal to a hearing officer. (*Id.* at pp. 90, 92.) The court in *Andal* reversed, concluding the requirement of exhausting administrative remedies does not apply to a party "who does not seek a refund but raises a comprehensive constitutional challenge to the Ordinance's validity." (*Id.* at p. 92.) The court stated: "It is true that the doctrine of exhaustion of administrative remedies is often applied to tax proceedings. [Citation.] These tax proceedings, however, generally involve refunds, methods, classifications, assessments and the like. . . . However, if a tax ordinance or law provides the taxpayer with no mechanism for a constitutional challenge to the entire structure under which the ordinance or law operates, then the exhaustion doctrine does not apply." (*Id.* at p. 93.)

Similarly, in *Park 'N Fly of San Francisco, Inc. v. City of South San Francisco* (1987) 188 Cal.App.3d 1201 the plaintiff brought an action for declaratory and injunctive relief challenging an ordinance that imposed a business license tax on operators of commercial parking facilities. (*Id.* at p. 1205.) The plaintiff argued that the ordinance was "constitutionally flawed" and that the city incorrectly classified the plaintiff as a commercial parking facility. (*Id.* at p. 1207.) The ordinance provided an administrative remedy: It allowed a licensee to "'apply to the collector for reclassification'" and to appeal the collector's decision to the city manager. (*Ibid.*) The court in *Park 'N Fly* held the plaintiff's failure to exhaust the ordinance's administrative remedy precluded the plaintiff from challenging its classification as a commercial parking facility, but did not preclude the plaintiff's constitutional challenge. (*Id.* at p. 1208.) The court stated: "The exhaustion doctrine does not, however, preclude consideration of [the plaintiff's] constitutional objections

to the ordinance, which provides the taxpayer with no mechanism either for challenging its essential validity or raising constitutional questions.  Where no forum or administrative remedy is afforded for the issues raised, recourse to the local administrative agency is not required before initiation of court action." (*Id.* at pp. 1208-1209; see *Powell v. County of Humboldt* (2014) 222 Cal.App.4th 1424, 1434 [property owners challenging the validity of an aircraft overflight easement requirement did not have to pursue an administrative zoning variance remedy, where there was "no indication the zoning regulations provided any mechanism for challenging the constitutional validity of the easement requirement"]; cf. *Flying Dutchman Park, Inc. v. City and County of San Francisco, supra*, 93 Cal.App.4th at pp. 1133, 1138 [ordinance authorizing an administrative refund claim "'*based on a violation of the United States or California Constitutions or a violation of a United States or California statute*'" provided an adequate legal remedy to a taxpayer challenging a parking tax as an "impermissible double real property tax" and as a violation of equal protection].)

The City argues nothing stopped the Carachures from asserting their constitutional claims and seeking equitable relief through the administrative refund process.  The City contends "the administrative process allows [the Carachures] to file a claim asserting that the sewer and solid waste franchise fees are void as unconstitutional under Proposition 218."  The City asserts:  "If the City agreed with the claim, the City could have taken corrective action, including issuing a refund and repealing the offending ordinances.  If the City had denied the claim, or failed to respond, [the Carachures] could have proceeded with suit where 'declaratory or equitable relief may be available.'"  The

16

City further states that "section 5472 does not prohibit equitable relief" and that under Revenue and Taxation Code section 5097.2 a claimant may assert the assessment is void.

The procedure the City suggests might have (in the City's words) "the salutary effect of conserving judicial resources" because the "challenger and the local agency may resolve the dispute without the challenger having to file an action." The issue, however, is not whether the Carachures *could have* filed an administrative claim seeking equitable relief under section 5472 and Article 2;[10] the issue is whether the statutory scheme *required* them to do so before filing this action. As discussed, the plain language of the statutory scheme requires a taxpayer to pay under protest and file a refund claim before filing a superior court action for a refund of sewer or trash fees. It does not require the same of a plaintiff challenging the constitutionality of a city's general practices for setting and spending such fees. "When statutory language is unambiguous, we must follow its plain meaning whatever may be thought of the wisdom, expediency, or policy of the act, even if it appears probable that a different object was in the mind of the legislature." (*Switzer v. Wood* (2019) 35 Cal.App.5th 116, 129, internal quotation marks omitted.) "'To justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them.'" (*Howard Jarvis Taxpayers Assn. v. Coachella Valley Water Dist.*, *supra*, 108 Cal.App.5th at p. 516.) It is not enough that "troubling

---

[10] We note that, unlike the ordinance in *Flying Dutchman Park, Inc. v. City and County of San Francisco*, *supra*, 93 Cal.App.4th at page 1138, section 5472 and Article 2 do not authorize an administrative claim for a constitutional violation.

17

consequences may potentially result if the statute's plain meaning were followed or that a different approach would have been wiser or better." (*Switzer*, at p. 129.) Whatever the advantages of requiring anyone challenging fees to present a refund claim before seeking equitable relief, the Legislature's decision to confine the protest-and-claim requirement to actions seeking refunds is not so unreasonable the Legislature could not have intended it.

The City cites two cases where courts dismissed actions because the plaintiffs did not pay under protest, as section 5472 requires. Those cases are distinguishable; in both cases the plaintiffs brought class actions seeking refunds of fees, as well as equitable relief. (See *Padilla v. City of San Jose*, *supra*, 78 Cal.App.5th at pp. 1076-1077 [plaintiffs sought "to recover millions of dollars in garbage collection charges" paid by "property owners who paid delinquent garbage collection charges to obtain the release of special assessment liens"]; *Los Altos Golf & Country Club v. County of Santa Clara*, *supra*, 165 Cal.App.4th at p. 202 [plaintiffs "sought a refund of the 'geographically discriminatory' surcharge" "on behalf of all property owners outside City limits who were charged more for sewer service than City residents"].) The Carachures paid the fees and did not seek a refund, either for themselves or on behalf of others.

The City also relies on two property tax cases, *Rickley v. County of Los Angeles* (2004) 114 Cal.App.4th 1002 (*Rickley*) and *William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1 (*William Jefferson*), but neither supports the City's argument the Carachures had to file a refund claim. In *Rickley* the taxpayer disputed the county's contention she had not fully paid her property taxes. (*Rickley*, at

18

p. 1005.)  The taxpayer filed an action asserting tort causes of action and seeking declarations that she was not delinquent on the taxes and that the county unlawfully recorded liens against her property.  (*Id.* at p. 1006.)  Citing the "'pay first, litigate later' rule," the court in *Rickley* described the taxpayer's request for declaratory relief as "nothing more than an attempt to circumvent the established statutory scheme mandated by the Legislature. . . .  Before pursuing judicial relief, [the taxpayer] was required to pay the taxes and file a claim for refund with the Board of Supervisors pursuant to section 5141.  Instead, she bypassed the administrative procedure to use a declaratory relief action as a springboard to allege intentional torts of defamation and abuse of process."  (*Id.* at pp. 1014-1015.)

 *Rickley* is distinguishable.  The plaintiff in *Rickley* did not (according to the defendant) pay her taxes in full, and she sought a declaration relating only to her personal tax liability.  As the court in *Rickley* stated:  "The point is, the [defendant] claims that [the plaintiff] has not paid her taxes and penalties in full and she disputes that claim.  At its core, this is a tax dispute."  (*Rickley*, *supra*, 114 Cal.App.4th at p. 1013.)  The Carachures, in contrast, paid all sewer and trash fees due.  They challenge how the City assesses and spends fees generally, not what the City charged them.

 *William Jefferson*, *supra*, 228 Cal.App.4th 1 is distinguishable as well.  In that case the issue was not whether the plaintiff exhausted its administrative remedies, but whether it sued the right party.  (*Id.* at p. 6.)  The plaintiff filed an application with the assessment appeals board challenging the assessor's base year value determination after the property

19

changed ownership. (*Id.* at p. 7.)[11] The appeals board denied the application as untimely. (*Ibid.*) The plaintiff filed an action seeking a "refund of taxes improperly paid based on the erroneous base year value" and an order directing the appeals board to vacate its decision denying the plaintiff's application to change the base year value. (*Id.* at p. 8.) The trial court granted the appeals board's motion for summary judgment on the ground a plaintiff may not bring a tax refund action against the appeals board. (*Ibid.*; see Rev. & Tax. Code, § 5140 [a taxpayer may bring a refund action in superior court "*against a county or a city* to recover a tax" the county or city refuses to refund, italics added].) The plaintiff argued its action was not an action for a tax refund because the plaintiff "only sought to correct an erroneous base year value determination and no refunds were involved in the proceedings." (*William Jefferson*, at p. 12.)

The court in *William Jefferson* rejected the plaintiff's argument, stating the plaintiff's action was "a tax refund action not only because it expressly seeks a tax refund, but also because it seeks to reduce [the plaintiff's] taxes by challenging the merits of the Assessor's decision setting the property's base year value . . . ." (*William Jefferson*, *supra*, 228 Cal.App.4th at p. 13.)

---

[11] "In 1978, Proposition 13 amended the California Constitution to limit real property taxes to 1 percent of a property's base year value adjusted annually by an inflation factor not to exceed 2 percent of the prior year's value. [Citations.] Proposition 13 set the base year value used to determine each year's taxes at the value the local assessor set on the 1975-1976 tax bill. [Citation.] A property's base year value may be reestablished only if the property is purchased, is newly constructed, or there is a change in ownership." (*William Jefferson*, *supra*, 228 Cal.App.4th at p. 9.)

20

Therefore, under Revenue and Taxation Code section 5140, the plaintiff "brought this action against the wrong party." (*William Jefferson*, at p. 17.) The City cites *William Jefferson* for the propositions "that any challenge to a tax must be brought as a refund claim and that the challenger must exhaust administrative remedies." But *William Jefferson* actually held something different and narrower: "Any action challenging *the merits of an assessor's base year value determination* is a refund action that must be brought against the county or city that collected the tax even if the action does not expressly seek a refund or disclaims the right to a refund." (*Id.* at p. 12, italics added.) *William Jefferson* does not support the City's contention a Proposition 218 challenge to the City's collection and spending of franchise fees is a refund action.

Finally, the City argues the "practical impact" of the relief the Carachures seek—a writ of mandate directing the City to "return or transfer back all solid waste service revenue transferred to the general fund" during the previous three years—is a "refund to all ratepayers." The City asserts that, because under Proposition 218 the City may only charge ratepayers the cost to provide service, any money transferred back to the enterprise funds "would necessarily reduce the amount of solid waste or sewer rates the City must collect from ratepayers," resulting in a "refund through reduced rates." Even if the City is correct that success by the Carachures in this action would reduce trash and sewer rates (a speculative assertion), the City provides no authority for its contention an action that results in a rate reduction for all ratepayers in the City is a refund action within the meaning of section 5472 and Article 2. To the contrary, a rate reduction is not a refund. (See *O'Donnell*

21

*v. Saul* (7th Cir. 2020) 983 F.3d 950, 956 ["A 'refund' is a 'return of money to a person who overpaid.'"]; *O'Gilvie v. United States* (10th Cir. 1995) 66 F.3d 1550, 1554 ["Refund means to pay back, return, restore, make restitution."]; see, e.g., *Los Angeles v. Public Utilities Com.* (1972) 7 Cal.3d 331, 356 [court affirmed a commission's decision "insofar as it reduced future rates," but "annulled the portion of the decision which required the refund" to ratepayers]; *State Farm General Ins. Co. v. Lara* (2021) 71 Cal.App.5th 148, 166 ["superior court stayed the refund" of homeowners insurance rates, "but not the rate reduction"]; see also *Bunker v. County of Orange* (2002) 103 Cal.App.4th 542, 544 [action seeking to enforce a statute requiring the county to send notices to taxpayers was not an action for a refund; any "refunds that occur as a result of this litigation will happen after it is concluded, when individuals file claims in the wake of those notices"].)

## DISPOSITION

The judgment is reversed.  The Carachures are to recover their costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.